## WHITE *et al. vs.* COOK.

1. Complaint for land was brought by Boynton, as next friend of Ola Pittman, a minor. Pending the action, she intermarried with one Cook, and the suit proceeded in the name of Ola Cook, as appears from the record. The bill of exceptions states the case as being that of Ola Clark, formerly Ola Pittman, against the defendants. A motion was made to dismiss the writ of error on this ground, and a counter-motion to amend the bill of exceptions, so as to make it conform to the record, was also made:

    *Held,* that the latter motion must be granted and the former overruled.

2. A plaintiff in ejectment cannot recover land as heir at law of her

father, where it appears that the title passed out of him by deed during his lifetime.

3. Where a deed was made by a man to a trustee, in which it was provided that, after the debts of the grantor should be paid, and after the death of his wife, the remainder of the property should be conveyed to his surviving child, if such surviving child could recover in ejectment under the deed of her father, her recovery would be based upon a perfect equity in her, and she would be entitled to possession of the land only after the debts of her father were paid.

(a.) If the trustee, having the right to sell in order to pay debts, did pay such debts with money derived from the sale of the land in controversy, no matter how he conveyed it, whether at public or private sale, individually or as trustee or agent or administrator, the party to whom he conveyed to pay the debts, and who paid the money to him to pay those debts, acquired an equity superior to that of the grantor's daughter.

4. The original deed being lost, the evidence was overwhelming that it and the sale were made by the trustee as such, although a second deed from the grantee of the trustee to the purchaser under him, made three or four years after a loss of the original deed between those parties, and in lieu thereof, described the lost deed from the trustee as made by P. (the name of the trustee), "administrator of the estate of the said" grantor in the trust deed.

(a.) If a mistake was made in the recital, it could be corrected, as is conceded, on clear testimony, and this could be done without going into equity, under the practice in this state.

(b.) The verdict is overwhelmingly against the evidence on the issue whether or not the deed was made by the trustee as such.

5. As both parties claimed title under the trustee, his books were admissible to show what money he received in the execution of his trust, from what sources, and how it was disposed of; especially was the book of accounts kept by him as trustee admissible to show what he received for the land in controversy and what he did with the proceeds.

6. The deed made in lieu of the lost deed was admissible in evidence, and the recital in it needed explanation.

7. The controversy being between one who held under the grantee of the trustee, and the daughter of the maker of the trust deed, and both parties claiming under the trustee, his grantee was competent to testify as to the character of the deed first made by the trustee to him, which was lost, although the trustee was dead.

8. It was error to charge to the effect that, although the grantee under the trustee, paid for the land and subsequently conveyed it to another, no title was conveyed to the latter, unless the trustee's grantee went into actual possession. If he exercised control and

dominion over the land, though not actually residing thereon, and the purchaser under him in good faith bought and took possession, the title passed.

9. There was no error in the charge concerning impeaching witnesses.

10. There was no error in the charge that, to correct the recital in the deed from the trustee's grantee to the purchaser under him, the proof should be clear and satisfactory; but this court differs from the court below and the jury as to whether it was clear and satisfactory.

11. It was error to rule that the purchaser from the trustee and the purchaser under him were bound to see to it that the money paid to the trustee went to the debts of the maker of the trust deed. It is enough that the money was paid to the trustee, under a purchase from him. It was his duty to apply it properly. The grantees have no concern with it, and the *cestui que* trust must look to the trustee.

February 7, 1885,

Practice in Supreme Court. Title. Ejectment. Equity. Estates. Remainder. Trusts and Trustees. Vendor and Purchaser. Deeds. Verdict. Evidence. Witness. Before Judge HARRIS. Butts Superior Court. September Term, 1883.

Ola Cook, formerly Ola Pittman, brought complaint for land against Willis and White on December 29, 1869. Plaintiff claimed as heir at law of her father and mother, deceased, and as remainderman under a deed from her father, C. C. Pittman, to Joseph Pittman, which contained the following clause:

"To have and to hold, to use, control, hire, sell, make title to said property, as my agent, trustee, attorney in fact, and otherwise dispose of said property as in his judgment may best promote and secure the purposes and objects of this conveyance, to-wit: the payment of all my just debts in existence at this date, and then to have and to hold in trust, as aforesaid, the remainder of said property and its proceeds for the sole and separate use, benefit, support, maintenance and behoof of my aforesaid wife, Margaret M. Pittman, for and during her natural life; at her death to be conveyed forever in fee simple to such child or children of mine and my aforesaid wife, Margaret, as may be then in life; and in the event of the death of my said wife, leaving no child or children by me in life, then to revert to myself, if in life; otherwise to my legal representatives."

White pleaded the general issue and equitable pleas, to the effect that the remainder interest of plaintiff was conditional, and did not vest until the payment of all debts of her father; that this defendant had been compelled to take up certain of these debts to protect his title, and held them as transferee; that they are now barred, unless relief be had in equity; that Joseph Pittman had sold the land in 1863 to one Edge, under power conferred in the deed from C. C. Pittman; that Edge paid $4,000.00, which was applied to the payment of the debts of the grantor; that subsequently this defendant bought the land from Edge for $5.500.00 in good faith; that Edge is insolvent and plaintiff has no visible property to answer a decree. He prayed that, if the title in him was not good, for any technical reason, he have an accounting for the $4,000.00 paid by Edge, with interest thereon, and for the amount of the claims held by him, and that the land be sold, and the proceeds applied for that purpose.

It is unnecessary to detail the evidence further than to state that the following appeared from it: The deed from C. C. Pittman to Joseph Pittman, trustee, was shown; also the sale by Joseph Pittman to Edge; and certain witnesses testified that Joseph Pittman made this sale as trustee under the deed. Both the deed from him to Edge and that from Edge to White were lost. In lieu of the latter, Edge had made to White another deed, which contained, at the close of the description, this clause:

"Heretofore conveyed by him to C. C. Pittman and by Joseph Pittman, administrator of the estate of the said C. C. Pittman, deceased, conveyed to him, the said N. N. Edge, which said last named deed is also lost or destroyed, and this conveyance made in lieu of said deed of said Edge lost as aforesaid."

The entire receipts by Pittman, trustee, from all sources were $10,417.00. The payment of certain debts of the grantor was shown, and defendants proposed to show from the trustee's accounts that he paid debts to the amount of $9.798.17, but this was ruled out. Both the Pittmans were dead at the time of the trial.

Plaintiff showed that Joseph Pittman was the administrator of C. C. Pittman; the appraisement of the property was $237.00 in 1861; the bond given was $1,200.00, and there was a bill of sale to the personalty for $216.80.

Plaintiff showed that in another case Thompson, who negotiated the purchase for Edge, swore that Joseph Pittman stated that he was the agent of his brother, C. C. Pittman. Edge testified that, if he so swore, it was a mistake. Defendant also showed that Edge swore, in another case, that the second deed made by him was made from statements by him to the scrivener. There was testimony on behalf of defendants, that Edge, after his purchase in the spring of 1863, had dominion and control over the land until the sale to White in the summer of the same year.

The jury found for the plaintiff the premises, with $454.02 for rent. Defendant, White, moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law, evidence and the charge of the court.

(2.) Because the court erred in rejecting so much of the evidence of N. N. Edge by interrogatories as was introduced to prove that Edge bought the land in controversy of Joseph Pittman, as trustee for C. C. Pittman.

(3.) Because the court erred in excluding from the jury, as evidence offered by defendant, a book of accounts kept by Joseph Pittman as trustee, and so proved by his widow, in which book the said Joseph charged himself, as trustee, with certain moneys arising from the sale of certain property of C. C. Pittman, and on which account there is an entry, "Received for sale of land, $4,000." The court allowed said account, so charging himself as trustee, as evidence, but excluded as evidence, in the same book and on the adjoining pages, in the hand-writing of Joseph Pittman, the account of disbursements of said money so received by said trustee—the aggregate of money so received being $10,417, and the aggregate of disbursements $11,183.17, as appears from said book in the hand-writing of said trustee.

(4.) Because the court erred in not excluding as evi⸗ dence, on the motion of counsel for defendant, the deed executed by N. N. Edge to Thomas M. White, dated 19th May, 1866, to the premises in dispute.—This deed was produced in court by defendant, under a notice from plaintiff, and defendant's counsel objected to its introduction, upon the ground that defendant did not claim the premises under it, but relied upon a prior deed which had been executed by Edge to defendant, White, and which had been lost or destroyed, the contents of which deed is a part of the evidence in such case.

(5) Because the court excluded from the jury answers and parts of answers in which Edge testified as to his purchasing the land and receiving a deed therefor from Joseph Pittman, trustee;—the court holding that any evidence as to what transpired between Edge and Pittman was inadmissible from Edge, because Pittman was dead.

(6.) Because the court charged as follows: "Witnesses may be impeached by the proof of contradictory statements. Witnesses, when impeached, should not be be⸗ lieved unless corroborated. It is for you to say whether any attempt at impeachment has been successful or not," —said charge being inapplicable to the evidence in the case.

(7.) Because the court erred in charging the jury that " a deed which recites a former deed and its loss is evidence of the first deed, and that the grantee and his privies are bound by the recitals. If a mistake is claimed to have been made in the recital, the evidence of such mistake must be clear and satisfactory."

(8.) Because the court charged as follows: " If you believe from the evidence that Joseph Pittman, to carry out this purpose, in fact sold the land for the purpose of paying the debts, and Edge paid him for it in good faith, and no deed was taken, and no possession went to Edge, and if White bought it from Edge and paid him for it, and Edge made White a deed to it, then, though no legal title

passed, and the plaintiff would be entitled to recover the possession of the premises, or if he sold as administrator, not according to law, yet if these facts are true, before the plaintiff could recover, it is conceded she should pay defendant whatever the proof shows had been paid by Edge and White towards the payment of C. C. Pittman's debts." —The objection was that the charge was contrary to law and without evidence to sustain it.

(9.) Because the court charged as follows: " If you believe from the evidence the plaintiff is entitled to recover, but there is a claim made out and sustained by the defendant against the land, then you should find what *mesne* profits are due plaintiff, and what amount of debts defendant and Edge, with interest thereon, have paid of C. C. Pittman, and find the balance as between the *mesne* profits and debts."—The objection was that this charge excluded from the jury all consideration of the purchase price paid to Pittman by Edge and White, and that it held " that Edge and White were bound to see to the appropriation of the purchase money to the debts of C. C. Pittman, paid by them to the trustee, before they could get credit for the same at the hands of the jury, and thus excluded the evidence as to said purchase money sought to be recovered under their equitable pleas."

The motion was overruled, and defendants excepted.

The motion to dismiss the writ of error is reported in the decision.

E. W. Beck; Alex. M. Speer, for plaintiffs in error.

J. S. Boynton; John I. Hall, for defendant.

Jackson, Chief Justice.

This is an action of ejectment in the statutory form, brought by Boynton as next friend of Ola Pittman, who afterwards intermarried with Cook, and the suit proceeded in the name of Ola Cook. By her abstract of title and

the complaint she filed, and the facts made by the record, it appears that she claims title as heir at law of C. C. Pittman, deceased, and by what appears to be an amended abstract as remainderman under a trust deed from C. C. Pittman to Joseph Pittman, in trust for the payment of the debts of C. C. Pittman, with remainder over.

1. A motion was made to dismiss the writ of error, on the ground that the case brought here in the bill of exceptions is that of Ola Clark, and not Ola Cook. A motion was made by plaintiff in error to amend by the record, and insert the name of Cook in lieu of Clark in the third line of the first page of the bill of exceptions. We allow the amendment. It appears of record that the original party was the minor, Ola Pittman, that she intermarried with Cook, not Clark, and that the draftsman of the bill of exceptions, by sheer mistake, wrote in the bill of exceptions, Clark, in place of Cook. The statute provides that the bill of exceptions may be amended by the record so as to conform to it. Code, §4288. This makes no change in the party, but the real party for whom Boynton sued as next friend, Ola Pittman, who became by marriage Ola Cook, is the identical party who sued and recovered below, and is called to answer here by this writ of error.

The amendment being made, the motion to dismiss must be denied.

2. Ola Cook could not recover this land as heir of her father, because the title passed out of him and into Joseph Pittman by deed to Joseph during her father's life.

3. Therefore, she is obliged to show that title passed to her under that deed to Joseph Pittman. Possession is title; and before it can be disturbed, the plaintiff must show that her title is sufficiently strong to disturb it. The defendant below, the plaintiff in error here, being in possession, will hold the land until she shows title better than his possession. She claims the better title, and must do so in this case, not as heir of her father, but as purchaser, in law,

from Joseph Pittman, trustee. What sort of title is that? The deed of trust discloses. Her title is not only subordinate to her mother's life estate, whatever that was, but to the payment of all the debts of her father. Not until those debts are paid could she compel Joseph Pittman to convey the land to her under the deed. The deed is that whatever remains of this land and negro property also conveyed in the trust deed, after the debts are paid and her mother's death, is to be conveyed to her, she being the surviving child.

It may be that, without a conveyance from the trustee, she may recover at law in ejectment; but that recovery would be based upon a perfect equity in her, and that equity is that she is entitled to possession of the land only after the debts of her father are paid. If any of them are outstanding, she cannot recover, because her equity is dependent on their payment, by virtue of superior equity derived from the same deed under which she claims title. If the trustee paid those debts with money derived from the sale of this land, no matter how he conveyed it—he having the right to sell to pay debts—whether at private sale or public sale, individually or as trustee or agent or administrator, the party to whom he conveyed to pay the debts and who paid the money to him to pay those debts, acquired an equity superior to hers. That Edge paid the trustee four thousand dollars for this land, and that this money was applied by him as trustee to the payment of debts, seems clear from the evidence. If the trustee were now alive, and were called upon in a court of equity to convey to the daughter of C. C. Pittman this land, and White, Edge's grantee, being a necessary party as possessor of the land, were made a party, could not White successfully defend his possession against this claimant under the trust deed, on the ground that he bought from the trustee; that, though his legal title to it was bad by being an individual title of the trustee, or administrator's title without an order to sell or with-

out advertisement and publicity of sale, yet that he bought from this trustee, and that this trustee got the money that White paid to him and expended some of it for debts of the deceased, and paid some of it to the life usee under the trust deed to him? Would a court of equity decree the conveyance to her against one in possession under, let us suppose, a defective conveyance from the man who was the trustee, and who applied the purchase money under his trust? We do not think it would be done; and if not, will a court of law give her the possession, under what is an equitable title?

4. But be this as it may, was the sale to Edge by Joseph Pittman and the deed made in pursuance thereof other than a sale and deed by him as trustee? It seems to us that the evidence is overwhelming that the sale and deed were made by him as trustee. Thompson, who negotiated the sale for Edge, and took a receipt from the trustee as trustee for part cash paid .down to bind the trade, swears so positively. The trustee's wife swears the same thing. Edge swore the same, though some of his testimony, all on this point may be, was ruled out, of which more anon. The book kept by the trustee, and proved to have been kept by him and in his hand-writing, proves the same thing as strongly as the trustee himself, if alive, could have done. And the only scintilla of testimony against this mass of evidence is, that the original deed to White from Edge having been lost in the war by the raid of the Federal army, another was made in 1866, three or four years afterwards, from Edge to White, in-lieu of that lost or destroyed, in which was recited these words in regard to the lost deed, to-wit: "And by Joseph Pittman, administrator of the estate of the said C. C. Pittman, deceased, conveyed to him, the said N. N. Edge." It is this recitation, and it alone, that makes the slightest trouble in this case. It is to be remarked that the recital is not that it was made by him as administrator, but the words may have been used merely as *descriptio personæ;* that it is not a recital of any vital part of the terms of conveyance; and even if it were,

and if White and Edge were estopped from gainsaying its truth, that the presumption would be that, if made by him as administrator, it was legally made, and if estopped from its denial, it would be the denial that he made it legally as administrator, and when it was shown that he did not make it legally in that character, it opened the door for explanation to show *aliunde* how and in what capacity he did make it so as to give it vitality. But let this pass.

If a mistake were made in the recital, even in one of this kind, it may be corrected, as is conceded by the defendant in error, on clear testimony, and it may be done without going into equity under our practice. And the court so charged. And the evidence is all one way, that it was a mistake. Nothing but the recital itself is on the other side, and if that be sufficient to overcome all outside evidence, however overwhelming, then no mistake could ever be corrected; for the recital by mistake would overbalance all *aliunde* proof that the mistake existed, which is a *reductio ad absurdum.*

So that we think that the verdict is overwhelmingly against the evidence on the issue whether or not the deed was made by the trustee as trustee, and that there should be a new trial on this ground.

5. More especially must we direct a new hearing, because we think that the court below erred in several rulings on the trial of the case.

We are clear that, as both parties claim title under Pittman, as trustee, his books were admissible to show what moneys he received, and from what sources, in the execution of his trust, and how they were disposed of. Especially was the book of accounts kept by him, as trustee, and so proved to be kept on its face, admissible, to show what he received for this land in controversy, and what he did with the proceeds. It is clear that the court erred in restricting it as evidence to what he received, and excluding what he disbursed, all in his hand writing, and in the same book.

6. We do not see error in the admission of the deed in lieu of the lost one. It was germane, and the recital in it needed explanation.

. 7. We think that the testimony of Edge on the character of the deed first made by the trustee to him, and lost, should have been admitted. It should not have been excluded, because Pittman, the trustee, was dead. Pittman was the person under whom both sides claimed. He was no party to the contract or cause of action in antagonism to the plaintiffs in error, and certainly he was no party to the suit. He was bound to plaintiffs in error on the deed he made them, if he made it illegally as administrator, and bound to defendant in error rightly to administer the trust. Neither at common law, nor under the statutory evidence act, was he an incompetent witness.

8. We think that the court was too close in charging the jury, under the facts in this case, to the effect that, though Edge paid for the land and conveyed it to White, yet, unless Edge went into actual possession, no title was conveyed to White. The evidence is that Edge was in dominion over the land, and thus controlled and possessed it for a few months, and then conveyed to White. Edge got title in the spring, and sold in the fall of 1863 to White, and if he did control and exercise dominion over the land, though not actually residing thereon, and White, in good faith, bought and took possession, the title passed.

9. We see no error in the charge about impeaching witnesses.

10. We do not see error in the charge that, to correct the recital in the deed which passed from Edge to White, the proof should be clear and satisfactory. We differ with the court and jury on the issue, whether or not it was clear and satisfactory. We think that it is so, as disclosed in this record before us.

11. We think that the court erred in ruling that Edge and White were bound to see to it that the money paid to the trustee went to the debts of C. C. Pittman. It is

enough that the money is paid to the trustee under a purchase from him; it is his duty to apply it properly, and the grantees have no concern with it. The *cestui que trust* must look to the trustee. So that credit should have been given for the purchase money paid the trustee.

On a careful examination of the whole case, on the law and the facts, we are clear that the law and the ends of justice demand a new trial, and it is so ordered.

Judgment reversed.