## Terry *et al. vs.* Rodahan *et al.**

1. A deed of bargain and sale made by an executor as an individual, he having no interest in the premises otherwise than as executor or trustee, will serve to execute a general power of private sale conferred on him by the will over the specific property conveyed, though the deed make no reference to the power, the will, the office of executor or that of trustee.

2. When the defendant in ejectment claims under a purchase consummated and evidenced by a deed, though the deed be lost, the effect of the parol purchase is not in question, and instructions thereon to the jury are not applicable to the case. Would a parol sale, not made as executor or trustee, but as an individual, come within the power?

3. The general presumption of the law that every man does his duty is open to misapplication and abuse by a jury, and should not be given in charge as the basis of a particular presumption that a deed made by an executor, who was also trustee for minors, was made by him as executor or trustee, the fact being, as indicated by all the evidence, that if the deed in question was made at all, it was simply the deed of the maker as an individual.

*This case was argued at the last term, and the decision reserved.

4. Written admissions of the ancestor tending to prove that he had sold and conveyed the premises, are admissible against the heir, in favor of one claiming as purchaser from the ancestor, the alleged conveyance being lost.

5. In an action of ejectment between two living parties, neither of them representing or being able to bind the estate of any person deceased, both of them are competent witnesses for some purposes, though both claim the premises in whole or in part under a deceased person, one as heir and the other as vendee. The vendee may testify to any act or fact with which his vendor had no connection.

January 9, 1888.

Deeds. Sales. Administrators and Executors. Trustees. Powers. Charge of Court. Presumptions. Admissions. Witness. Vendor and Purchaser. Before Judge HARRIS. Carroll County. At Chambers, August 14, 1886.

The grounds of the motion for new trial referred to in the 3d, 4th and 5th divisions of the decision were as follows :

(4) Because the court admitted in evidence an envelope addressed to " John Rodahan, McDonough, Georgia," and a letter therein addressed to Charles Rodahan, dated "Hawkinsville, December 20th, 1869," and signed " A. T. Burke."—The objection was, that it was irrelevant, having been written after defendants claimed to have obtained title from Burke.

(6) and (9) Because the court charged the jury that, if they believed that A. T. Burke was trustee or executor, and while invested with such power made a deed to John Rodahan to the premises in dispute, the law presumes that he did so as trustee or executor, for it presumes that a trustee or executor, in dealing with the property of his *cestui que trust*, acts in accordance with the power given him as trustee or executor, and it would be incumbent on the plaintiffs to show otherwise.—In the ninth ground, the charge excepted to uses the words, " the law presumes

that every man does his duty "; otherwise it is substantially the same as just recited.

(11) Because the court allowed John Rodahan to testify, over objection of plaintiffs, on the ground that Burke, their trustee, was dead.

W. J. ALBERT, for plaintiffs in error.

R. L. RICHARDS; G. W. AUSTIN; G. W. BRYAN, for defendants.

BLECKLEY, Chief Justice.

In December, 1883, Mrs. Terry brought ejectment against Rodahan, to recover about forty acres of land lying within, and adjacent to Carrollton, together with mesne profits. Several demises were laid in the declaration, but only her own had any essential bearing on the result. Her mother (Mrs. Burke), who died testate in October, 1862, owned the premises, and disposed of them by will. The will bore date September 7th, 1862, and was admitted to probate in common form and recorded in January, 1863, and letters testamentary were ordered to issue. Her children, three in number, a son and two daughters, were the objects of her bounty; to them she bequeathed the whole of her estate, including slaves, choses in action and other personalty, together with the premises involved in this action. The third item of her will was as follows:

" I will and bequeath to my aforesaid children the house and land where I now live, consisting of some forty acres, more or less, in the town of Carrollton; to have and to hold the same to them and their heirs forever in fee simple."

The seventh item was in these words:

" I hereby direct, request and fully empower my husband, Archibald T. Burke, the father of my children, to take charge of all the aforesaid property at my death, and manage it to the best advantage for my dear little infant children, and in regard to said property to act as their trustee, after settling my debts; and he is fully empowered, either in the capacity of trustee or executor, to sell any of the

above property, either at private or public sale, should he deem it for the interest of said children, and vest the proceeds of the sale in other property, or put the money at interest, as he thinks best, he being clothed with full and ample power to manage said property as he thinks for the best interest of my said children. And as my said children arrive at the age of twenty-one years, or in case the girls should marry, I direct my said husband to give each one off her equal share of the property. And it is my express wish and intention that in no case shall the property that I have hereby given my daughters, or either of them, be subject to any debt contracted by their or either of their husbands, either before or after marriage, but should be for the mutual benefit of them and their husbands or husband, and their children should they have any. And the little property that I have hereby given my son, I direct his father, when he becomes of age, to turn it over to him, if he is sober, steady and industrious, and shows a disposition to take care of it; but should he, unfortunately, be wild and dissipated and a spendthrift, I hereby direct his father to withhold from him the little that I have here left, until such time as he becomes sober, steady and capable of taking care of it."

The eighth and last item appointed the husband sole executor. The first item mentioned a debt due to Mandeville and Stewart as the only one which the testator owed, directed the executor to pay it with as little delay as possible, to collect and apply certain money due her for the hire of negroes, and should the same not be sufficient to discharge said debt, to "hire said negroes or such numbers of them as he thinks proper for the purpose of discharging said debt, unless he should meet with a favorable opportunity to sell said land."

Of the three children, Mrs. Terry, the plaintiff, is the sole survivor, her sister having died in November, 1865, aged six years, and her brother in October, 1867, aged ten years. Her father, A. T. Burke, the executor and trustee, died in January, 1882. The plaintiff was born in April, 1856, and married in April, 1874. This action was commenced on December 29th, 1883.

The defendant, Rodahan, pleaded the general issue; prescription by seven years adverse possession with color of title, prescription by twenty years adverse possession; also the limitation act of 1869.

At the trial he was the sole witness as to his possession, though the premises are situate, a part within and the residue just outside of a populous county town. His possession was exceedingly sluggish and indolent; of the remittent, if not also of the intermittent, type, its general characteristic being typhoid. Such as it was, it began in December, 1864, but Mr. Rodahan did not pay taxes on the property or return it for taxation until 1872, his reason for the omission being that a law was passed just after the war exempting wild land from taxes. This law was altogether imaginary, and had it been real, his classification of improved town property as wild land would be quite novel and anomalous. But admitting his classification to be correct, what becomes of actual adverse possession? When the land is wild, is not the possesion also wild?

1. The serious part of the defence, however, was not prescription, but an alleged purchase from A. T. Burke (the executor and trustee), and a conveyance by deed from him to Rodahan; the contention being that this deed, taken in connection with Mrs. Burke's will, passed her title into Rodahan and divested her children, the plaintiff included, of all interest in the premises. There was evidence tending to prove the purchase, the payment of the price (which was $3,500 in Confederate money), the existence of the deed, the death of the attesting witnesses, the contents of the instrument, its loss, that it was never recorded, etc. If made at all, it bore date in November or December, 1863, purported to be made, signed, sealed and delivered by A. T. Burke, not as executor or trustee, nor by virtue of any will or other power, but simply as A. T. Burke, was attested by two witnesses, one of whom was a justice of the peace, conveyed the premises to Rodahan in fee simple, with general warranty of title, and acknowledged the payment of $3,500 as consideration. These particulars are taken from a copy in the record (most probably dictated by Rodahan), testified to by him as correct without explanation of how the copy originated, or how

he verified its correctness to his own mind.   He also testi-
fied that his possession commenced and was held under
the deed; that " until yesterday " he never heard of the
will or knew that Burke was trustee, and that he paid the
purchase money in full.

Supposing all these facts established as to purchase, pay-
ment and taking a conveyance, did the deed of A. T.
Burke, making no reference to the power and containing
no allusion to his representative character, either as exec-
utor or trustee, operate as a valid execution of the power
of sale conferred by the will?   It is manifest from the re-
cord that though Burke originally bargained with Mande-
ville and Stewart for the property, he never acquired title
to it in his own right, but that Mandeville and Stewart
conveyed it in the year 1859, with his consent, to Boggus,
as trustee for Mrs. Burke, and that Mrs. Burke was the sole
and exclusive owner at the time of her death.   Her will
was probated and admitted to record on Burke's applica-
tion as the nominated executor, and the instrument con-
tains a distinct reference to a marriage settlement confer-
ring upon her power and authority to dispose of her prop-
erty.   Burke's assent to the will, if it needed his assent to
render it valid, was thus beyond question.   His precise
legal relations to the premises in dispute at the time he is
alleged to have conveyed to Rodahan was that of executor
to his wife's will and trustee for the children, with power
to sell in either capacity, at public or private sale, and
with no interest whatever in the property, legal or equita-
ble, as an individual.   His deed, if left to work by his own
interest, would not work at all, for he had no interest; it
had to work by the power or pass nothing.

Amongst the multitude of cases touching the execution
of powers without recital of the power or any reference to
its existence, comparatively few relate to sales of real
estate by executors or trustees; the great mass of them
deal with the power of appointment, and most of these
concern appointments by will.   There is, however, a gen-

eral thread of principle which runs through all the authorities, and a general agreement of the authorities respecting the principle. The principle may be stated thus: An instrument which will serve to execute a power and which purports to convey the specific realty to which the power applies, will be referred to an interest and not to the power, if the maker had an interest on which the conveyance could attach; but if he had no such interest, it will be referred to the power, and be treated as made in execution thereof.

" A donee of a power may execute it without referring to it, or taking the slightest notice of it, provided that the intention to execute it appear.

" Where a man has a power to limit uses, and no power to convey the land, if he convey or devise the land generally, and the circumstances required to the execution of the power as to subscription, witnesses, etc., are observed, the conveyance or devise shall inure as a limitation of the use, because otherwise it would be void.

" And as a general disposition of the very property will amount to an execution of the power, so where there are several powers in one person over different estates, a like disposition of them all will operate as an execution of all the powers.

" If a man have two general powers over the same estate, with different circumstances, and do an act without referring to the powers which may be valid as an exercise of one of them, it will be deemed an execution of that power which will support the disposition." 1 Sugden on Powers side pages, 356, 357.

" Where, however, the power is not referred to, the property comprised in it must be mentioned, so as to manifest that the disposition was intended to operate over it; the donee must do such an act as shows that he has in view the thing of which he had a power to dispose." *Id.* 367.

" Upon these distinctions it has been held that, where otherwise part of the disposition would be void and the words remain unsatisfied, the words, if specific in their

nature, will apply to the real estate in the power. There-
fore, if the subject of the power be real estate, and the
donee make a general devise of all his real and personal
estate, and has no real estate, the estate subject to his ap-
pointment will pass, for the gift as to the real estate is spe-
cific, and as there is no other subject for it to attach upon,
it must refer to that over which the testator has a power."
*Id.* 377.

"The power may be executed without reciting it, pro-
vided the act shows that the donee had in view the subject
of the power. . . . The general rule of construction, both
as to deeds and wills, is, that if there be an interest and
power existing together in the same person, over the same
subject, and an act be done without a particular reference
to the power, it will be applied to the interest and not to
the power. If there be any legal interest on which the
deed can attach, it will not execute a power. If an act
will work two ways, the one by an interest, and the other
by a power, and the act be indifferent, the law will attrib-
ute it to the interest and not to the authority, for *fictio
cedit veritati.*" 4 Kent's Com. side pp. 234, 235.

"The donee of a power may execute it without ex-
pressly referring to it, or taking any notice of it, provided
that it is apparent from the whole instrument that it was
intended as an execution of the power. The execution of
the power, however, must show that it was intended to be
such execution; for if it is uncertain whether the act was
intended to be an execution of the power, it will not be
construed as an execution. The intention to execute a pow-
er will sufficiently appear—(1) when there is some refer-
ence to the power in the instrument of execution; (2)
where there is a reference to the property which is the
subject-matter on which execution of the power is to oper-
ate; and (3) where the instrument of execution would have
no operation, but would be utterly insensible and absurd,
if it was not the execution of a power. Thus, if a donee
of a power to sell land have also an interest in his own

right in the same land, his deed of the land, making no reference to the power, will convey his own interest; for there is a subject-matter for the deed to operate upon, excluding the power, and, therefore, as it does not conclusively appear that the deed was intended to be an execution of the power as well as a conveyance of the grantor's interest in the land, it will be held not to be an execution of the power; but if the grantor has no interest in the land, his deed will be insensible and a mere absurdity, if not intended as an execution of the power; therefore, it will be held to be an execution of the power, if it refers to the subject-matter of the power, or describes the land over which his power extends. It will be seen that this last conclusion is a presumption of law; this presumption may be more or less strong, according to all the circumstances of the case and the condition of the property. If all the words of a deed or will can have an effect given to them, and an operation upon property or rights, without being taken as the execution of a power, they will not be an execution of such power. If a man has several powers, and refers to some and not to others, the execution will exclude those not referred to. From these propositions it may be seen why a conveyance of specific property, or a specific devise of property, will generally operate as the execution of a power, if the grantor or testator has no other interest in the property but the power, although he makes no reference to the owner in his deed or will." 2 Perry on Trusts, §511c. Blagge *vs.* Miles, 1 Story, 427; Carver *vs.* Jackson, 4 Peters, 97, 98; Carver *vs.* Morris, 6 Peters, 619; Hamilton *vs.* Crosby, 32 Conn. 342; Bolton *vs.* Jacks, 6 Robt. (N. Y.) 168, 228; Coryell *vs.* Dunton, 7 Pa. State, 530; Pease *vs.* Pilot Knob, 49 Mo. 124; Wetherill *vs.* Wetherill, 18 Pa. St. 265; Keefer *vs.* Schwartz, 47 *Id.* 503; Bingham's Appeal, 64 *Id.* 345; Drusadow *vs.* Wilde, 63 *Id.* 170; White *vs.* Hicks, 43 Barb. 64; White *vs.* Hicks, 33 N. Y. (6 Tiffany), 383; Crabb Real Prop. §§1994, 2037, 2039.

In Doe *vs.* Sturges, 7 Taunt. 217, one of three executors was devisee for life with power to lease the premises for not exceeding twenty-one years, and a like power exercisable after his death was granted to the surviving executor. The tenant for life entered and made a lease for forty-two years, reserving rent to himself. This lease, though made by him in his own name, and not as executor, was held to take effect for its full term out of his legal interest as executor, his mere entry and thereafter making a lease inconsistent alike with his estate as tenant for life and his duty as executor not being evidence even of his own assent to the legacy, which assent was necessary to clothe him with the right to lease in his character of tenant for life. In other words, not having at the time of granting the lease any right to grant it as an individual, he was held to have granted it as executor, though he did not in executing the lease profess to act in that capacity. The opinion of the court was delivered by Chief Justice Gibbs.

In Allison *vs.* Kurtz, 2 Watts, 185, a testator directed that all his lands be sold by his executor, and that the proceeds, over and above certain pecuniary legacies to his daughters, be divided amongst his sons, one of whom, Robert by name, qualified as executor of the will. The executor did not sell, but the sons, regarding the lands as their own, divided them by metes and bounds, and interchanged warranty deeds of bargain and sale amongst themselves so as to give effect to their scheme of voluntary partition. The deeds referred to the father's will, but described it as bequeathing the lands directly to the sons. Richard, the executor, participated in this transaction, but only as an individual, not as executor, executing deeds as did the rest in his private and personal capacity. A parcel of land thus conveyed to one of his brothers, was sold by the latter on the same day, and afterwards passed into the hands of Kurtz, who was a purchaser for value. Richard, as trustee for his sisters, whose pecuniary portions had

not been paid, brought ejectment against Kurtz, and sought to recover notwithstanding his own deed under which Kurtz claimed. The court, holding that no title to the lands passed under the will to the testator's sons, but that Richard, as executor by virtue of a statute of Pennsylvania, took the whole title, nevertheless decided that the deed of Richard operated upon the premises in dispute by reason of the power of sale conferred by the will, and was a good execution of that power. In delivering the opinion, the court, by Sergeant, J., said, " Here was a design to convey the estate, manifested by a sufficient deed of bargain and sale. The parties supposed it was valid as a conveyance of interest, and the deed did not recite or refer to the power of Richard under the will. The fact turns out to be that no interest existed. The deed then derives validity from the power which the grantor, Richard, clearly had under the will; because the estate can pass in no other way. It was at best only a mistake as to the form of the conveyance; and though the power is not referred to, the vendee has the right, under established legal principles, to consider it as a muniment of title, and to resort to it for support when the supposed foundation of his title proves insufficient." This case clearly rules that an executor, having title as such, but no title as an individual, may pass title by his warranty deed made as an individual, the will giving him power to sell as executor. In order to uphold the alleged deed of Burke to Rodahan as a conveyance of all that Burke could convey in his character of executor, it is not necessary to go farther than this case leads, if in truth Rodahan purchased of Burke, paid value and took his deed.

Much is said in the books of an intention to exercise the power, and where a purchaser for value is not concerned, the absence or presence of such intention in actual consciousness as matter of fact, may be the general test of efficacy. But even then it is questionable whether a certain and specified intention to dispose of the identical

property covered by the power, though no thought of the power were present to the mind, is not the only intention necessary where there is in fact no interest apart from the power. Sugden says, " If the intention to pass the property can be collected, it will pass under the power, although the donee supposed that it would work by force of his interest. There is no conflict; he intends the property to pass, and thinks he has all the interest in it, whereas he really has only a power. The intention governs and the power will support the disposition." 1 Sug. Powers, s. p. 421.

Every purchaser of realty for value takes the risk of his vendor being clothed with power to sell at the time of the sale, and by the mode of sale adopted; but he is not bound to know from whence the power is derived, or whether it springs from ownership or by delegation in trust. It is enough that there be authority to sell and convey when and how the sale is made, and the conveyance executed. If the vendor actually sell and convey, his intention to do so is manifested, and whether in his own mind he means to do it in one character or another, the purchaser need not know nor inquire; provided only that the sale and conveyance be such as the vendor has a legal right to make. If the rules of law applied to the conveyance in the actual circumstances treat it as sufficient to pass the title, it will have that effect. Of course the purchaser could derive no title through any breach of trust, or fraud, on the part of the trustee, of which he had notice or to the accomplishment of which he knowingly contributed. Nor would he, as against beneficiaries of the trust, take any title which the trustee could not impart at the time in the mode pursued. *Knorr vs. Raymond,* 73 *Ga.* 774, and cases cited.

Our conclusion is, that if Rodahan purchased from Burke, not knowing of the will, paid the purchase money, and took a deed from Burke, he thereby acquired the title, both legal and equitable, to the premises in dispute.

v 79 19

2. But we think the jury should have been so instructed as not to relieve them from deciding whether the deed was made or not. Rodahan did not set up or adduce any testimony to a mere parol purchase, but relied on a purchase consummated by a conveyance in writing. Moreover, he did not profess to have dealt with Burke as executor or trustee, but testified, on the contrary, that he did not know he was trustee and had never heard of the will. For these reasons, it was error to charge the jury, as set out in the 10th ground of the motion for a new trial, that " if you believe from the 'evidence that the defendant bought said land from A. T. Burke, as trustee or executor, and paid the purchase money therefor, and went into possession under such purchase, then I charge you that defendant got the legal title to the premises in dispute, whether any deed was made or not."

We have above indicated sufficient cause for disapproving this charge, but were the charge applicable to the facts of the case, it would still be open to the grave question whether a sale of land made by a person in his individual capacity, attended with payment of the purchase money, and entry into possession by the purchaser, would be a valid execution of a power to sell lodged in the vendor as executor or trustee. Is it not going far enough to treat an individual deed as sufficing to execute a trust power? Are there not considerations both of principle and policy against allowing a trustee to part with title to the trust land, especially to contract it away as his own, without affording written evidence of alienation? Powers of selling realty are to be executed in the mode, if any, prescribed in the instrument which creates them; and if none is prescribed, should it not be implied that the mode in general use for conveying land is the one to be observed? Crabb Real Prop. §§1987, 2032; Boshart *vs.* Evans, 5 Whart. 562. In Silverthorn *vs.* McKinster, 12 Penn. St. 67, a sale of land made by executors as such, though in parol, with possession delivered, was held a good execu-

tion of their power of sale, so far as to pass an equitable estate ; and a previous Pennsylvania case is cited as so ruling.   Taylor *vs.* Adams, 2 S. & R. 534.   These cases relate to sales by executors in their character as executors, and hence their doctrine would not be broad enough to include the present case, one in which the purchaser dealt with his vendor, paid him, and took possession under him as an individual, and not as filling any fiduciary capacity. To say that he could thus acquire a perfect equity equivalent to the legal title, without even showing that the trust estate got the benefit of the purchase money, would seem to be going quite beyond both principle and authority. In the absence of a deed, or writing of any kind, it would be little enough for even a court of equity, as a condition of aiding the purchaser in perfecting his title, to require him to show that purchase money paid to the vendor as money of the vendor personally, was treated by the latter as trust funds and applied for the use of the trust estate. Nothing said in *White vs. Cook*, 73 *Ga.* 164, militates against this suggestion, construing the opinion delivered in that case as a whole, and as taking tone and color from the facts on which it was predicated.

3.   We also think that the charge of the court set out in the sixth and ninth grounds of the motion for a new trial should have been omitted, as inapplicable to the precise facts of the case, and as giving undue support by mere presumptions of law to a theory (favorable to but not advanced by the defendant) that the deed was made by Burke as executor or trustee.   There was absolutely no evidence that Burke made the deed as executor or trustee, and the copy which Rodahan verified as correct did not so import.   Moreover, the founding of one presumption on another, such as the law presumes that every man does his duty, and therefore the law presumes this man did so and so, is not a safe mode of stating presumptions to a jury, where there is any chance of misapplying the wider presumption to some other part of the case.   The presump-

tion that every man does his duty is liable to great abuse. On it alone the jury might by a blunder always find for the defendant. If every man does his duty, no plaintiff ought to recover. The charge as to the nature and effect of the alleged deed (adapting the charge to the evidence in this record) ought to have been, in substance, that if Burke, as an individual, after qualifying as executor and while still in office as executor, made a deed of bargain and sale, duly executed, conveying the premises to Rodahan, and Rodahan paid him therefor a valuable consideration, not knowing of the will or that he was executor, the deed operated as an execution of the power of sale created by the will, and its legal effect was to pass the title into Rodahan. The reason for making here no reference to Burke's character as trustee is, that while his power to sell as executor extended to a sale for the payment of the debt of his testatrix, his power to sell as trustee perhaps did not, and may not have been legally exercisable until after that debt was paid; and it seems the debt has not even yet been paid in full. The reason for making no allusion to an interest in Burke as an individual is, that according to the evidence now in the record, he had no such interest when the deed is alleged to have been executed, nor is there any evidence tending to show that he had.

If for any reason the deed would not operate to pass title under the power of sale in the will, then if Burke afterwards inherited from his deceased children an interest in the premises, that interest would pass to Rodahan by virtue of the deed, on the principle of estoppel. Code, §2699; *Parker vs. Jones,* 57 *Ga.* 204. Of course, this aspect of the case as to the effect of the deed on that interest, in the event supposed, would be proper matter for instructions to the jury.

4. A letter written by A. T. Burke to Rodahan in December, 1869, was offered in evidence by the latter, and admitted over objections for irrelevancy, etc. by the court. (Fourth ground of the motion for a new trial.) The letter

is copied at length in the record. It speaks of " our land trade"; says the land was bought by Burke of Appleton Mandeville; states, as matter of law, that the vendor's lien is waived by taking personal security, that there is no vendor's lien as against a purchaser without notice; and, as matter of fact, that he (Burke) knows Rodahan to be such a purchaser. It purports to be a reply to a letter from Rodahan, and expresses the hope that his fears, if he has any, will be quieted. If the plaintiff, Mrs. Terry, claimed alone under the devise to herself in her mother's will, there might be some doubt as to the admissibility of this letter; at all events, its admissibility would be less obvious. But she sues for the whole land, the whole interest in it, and in addition to her own demise, lays demises severally from her deceased father, brother and sister. Of course, on these demises from deceased persons there can be no recovery (*Head vs. Driver*, last term, *ante*, 179), but they serve to make plain her purpose not to limit her own demise to the one undivided third interest which she took by the will. By our law of descent, she and her father inherited equally from her brother and sister; so that her father, if he made no sale to Rodahan, was owner of one-third, and she of two-thirds of the premises, when the letter was written, both of the deceased children having died before that time. The contents of the letter were thus declarations made by her father against his interest. And if the one undivided third interest inherited by him passed on his death to the plaintiff as his sole heir at law, she, claiming now in privity with him, would be affected by his admissions, so far at least as the interest derived from him by inheritance is concerned. It surely needs no authority to prove that admissions of the ancestor which would affect him were he the party, are receivable in evidence against the heir. We have seen already that if the alleged deed was made by Burke under circumstances that prevented it from passing the trust title, it would transmit to Rodahan any title which Burke may have acquired

in his own right after the execution of the deed Thus, the deed would be a defence to the action as to one undivided third of the premises. The letter was strong circumstantial evidence that such a deed, or at least some deed to Rodahan, had been executed by Burke, and the paper being lost and the subscribing witnesses as well as Burke being dead, circumstantial evidence to prove execution was admissible and might be sufficient to establish the fact. *Payne vs. Ormond*, 44 *Ga.* 515. That the letter refers to these premises is morally certain, from several allusions found in it, one to Appleton Mandeville, who together with Stewart executed the deed to Mrs. Burke's trustee, and gave his testimony at the trial.

5. The only remaining question necessary to notice is, whether Rodahan was a competent witness in his own favor, notwithstanding Burke, from whom he claimed to have derived title and possession, was dead. The court held him competent as to all matters except such as transpired between himself and Burke. (Eleventh ground of the motion for a new trial.) In point of fact, he testified to many of these excepted matters, but to this, as the court certifies, there was no objection, so that we have only to determine whether he was wholly incompetent. The parties to the case on trial were both alive; Burke's administrator was not a party, nor could Burke's general estate be affected by the result. There is certainly no doubt of Rodahan's competency to prove his possession after the death of Burke, and the value of the premises thereafter for mesne profits. Code, §3854; *Rose vs. West*, 50 *Ga.* 480. And the general proposition that he could testify to any act or fact with which his deceased vendor had no connection, is countenanced by several cases decided by this court.

Judgment reversed.