## GRAYSON *et al.* v. GERMANIA BANK *et al.*

1. Where a donee of a power to apportion property and appoint from a class certain persons who are to hold the apportionment made by the donee, under the terms, conditions, and limitations imposed by the donor in his will creating the power, executes a will devising the specific property in parcels to appointees selected from the proper class, such will is to be regarded as an act indicative of the donee's intention to execute the power.

2. A testator made specific devises of property to his children and issue of deceased children, with certain conditions and limitations. He devised certain property to his wife for life, with power in the wife by will to dispose of the property devised to her, the same to be devised by her to such of the testator's children or issue of deceased children "as she may desire," and such devises to be upon the same terms, conditions, and limitations as the devises which were made to them under his will. The wife made a will which contained no reference to

the power, but in which she devised the property, without limitation or condition, to two children and two grandchildren of the testator. *Held:* (*a*) That the power to the wife extended only to the nomination of certain persons from a class, and the apportionment of property among her appointees, who would take under the donor's will, subject to the terms, conditions, and limitations therein imposed upon each appointee. (*b*) Where the quantity of interest to be taken by an appointee is expressly limited by the instrument creating the power, and the donee is only authorized to appoint the property over which the estate is to ride, an appointment by the donee of an interest exceeding that intended to be given to the appointee is tantamount to an exercise of the power of appointment to the extent of the power. (*c*) The donee's will was a good execution of the power.

AUGUST 12, 1913.

Equitable petition. Before Judge Charlton. Chatham superior court. July 15, 1912.

Alfred M. Martin died on the 13th of May, 1910, leaving a will. The first item was as follows: "I give and devise to my beloved wife, Elizabeth M. Martin, the homestead plantation, being the place on which I now reside, with my summer place included, together with all the lands connected with the same; also all the horses, mules, cattle, household furniture, and everything else upon or connected with said plantation; also the sum of seventy-five thousand dollars to consist of such bonds and stocks as she may elect to take out of the assets of my estate. To have and to hold the above-mentioned real estate and personal property for and during the period of her natural life, with full control over and enjoyment of the rents, issues, profits, dividends, and interest thereof, to be used and disposed of by her as she may deem proper; and I do hereby authorize and empower my said wife to dispose of the property hereby bequeathed to her, by her 'will,' the same to be devised by her to such of my children or the issue of any of my children as she may desire, the children of my deceased daughter, Alice Tyler Marshall, as well as others; but the bequests so made by my said wife must be upon the same terms, conditions, and limitations as the bequests hereinafter made by me to my children and my grandchildren. But in case my said wife shall die, leaving no will, then and in that case the property hereby devised to her shall be equally divided among my children and the issue of any deceased child or children per stirpes, the issue of any deceased child taking the share that his, her, or their parent would have been entitled to if living; the title to such share to vest in the trus-

tees or guardians hereinafter provided for, or their successors appointed according to the terms of this will, and subject to the same terms, conditions, and limitations as hereinafter provided, as to bequests hereby made. I do further direct that in the event that my said wife should elect to take any other property belonging to my estate in lieu of the real estate hereby devised to her, she may make such election to the value of sixteen thousand dollars, the valuation placed on said above-described real estate, and shall hold such property elected by her to be taken, upon the same terms, conditions, and limitations as hereinbefore provided." In item three he declared that it was his desire to make his children as nearly equal in the division of his estate as practicable. He thereupon devised specific property to each of his five living children and to two grandchildren, sons of a deceased child. The devise to each of his children and two grandchildren was upon certain trusts, terms, and limitations. His wife elected to take 694 shares of the capital stock of the Southwestern Railroad Company of the value of $75,000, and the certificate for the 694 shares of this stock was issued to her as life-tenant under her husband's will; and she elected to keep the real estate and tract of land consisting of 1,300 acres in Hampton county, South Carolina. She exercised her right of election prior to the execution by her of her last will. She owned no stock in the Southwestern Railroad Company, and had no interest in any stock of this corporation, except the right or power of appointment over the 694 shares obtained under her husband's will. The real estate that she elected to take is the same real estate which she disposed of under her will, and she exercised the right of life-tenant over this property up to the time of her death. On January 17, 1911, Mrs. Elizabeth M. Martin made her last will and testament. Items one and two related to the manner of her burial, and the direction to her executors as to the payment of her just debts, should there be any. The remainder of her will was as follows: "Item 3. I give, bequeath, and devise unto my daughter, Bessie E. Cozart, three hundred (300) shares of the capital stock of the Southwestern Railroad Company. Item 4. I give, bequeath, and devise unto my grandson, Alfred M. Marshall, ninety-seven (97) shares of the capital stock of the Southwestern Railroad Company; and I give, bequeath, and devise unto my grandson, Samuel F. Marshall, ninety-seven (97) shares of the capital stock

of the Southwestern Railroad Company; I give, bequeath, and devise unto the said Alfred M. and Samuel F. Marshall and Elise M. Jones, to share and share alike, all of that tract of land situate, lying, and being in the State of South Carolina, in the county of Hampton, adjoining 'Woodstock,' and more particularly described as all that tract of land bounded north by Woodstock, east by Woodside, south by the lands of Elliott and Solomons, and on the west by the Savannah River. Item 5. I give, bequeath, and devise unto my daughter, Elise M. Jones, two hundred (200) shares of the capital stock of the Southwestern Railroad Company; and I also give, bequeath, and devise unto my said daughter, Elise M. Jones, all of that tract of land situate, lying, and being in the State of South Carolina in the county of Hampton, formerly known as the 'Homestead,' and now known as 'Woodstock;' said tract of land containing thirty-five hundred (3500) acres more or less, and being bounded on the southwest by the Savannah River, northwest by the lands now or formerly belonging to Joseph M. Bostick, northeast by the lands now or formerly belonging to John Lawton and E. G. Solomons, east by the lands now or formerly belonging to D. Ramsey and A. M. Martin. I also give, bequeath, and devise unto my said daughter, Elise M. Jones, the dwelling-house situate on the above-described plantation, together with all the outhouses, farming implements, growing crops, and all and singular the rights, members, hereditaments, and appurtenances to the said tract of land being, belonging, or in any wise incident or appertaining. The said tract of land, herein intended to be devised and bequeathed, is the same property formerly belonging to Edmund Martin, and is the property conveyed to Elizabeth M. Martin by Abram M. Martin and John Marshall, executors of the last will and testament of Edmund Martin, as will more fully appear from the description of said tract of land in Book of Mesne Conveyances, 7 D's, page 305, on the records of Beaufort County, South Carolina. All of the bequests in the foregoing items are made after mature deliberation, and with full appreciation of my duty toward my other children and heirs at law, and with undiminished love and affection for each of my children and all of my beloved grandchildren. The difference made between Bessie E. Cozart and Elise M. Jones is made in recognition of the many sacrifices made by the said Elise M. Jones for me, she having un-

selfishly devoted the best years of her life ministering to my comfort and happiness; and it is therefore my earnest desire that she possess and enjoy Woodstock Plantation, with all of its appurtenances, as fully and completely as I have in my lifetime. Item 6. I hereby nominate, constitute, and appoint the said Elise M. Jones the sole executrix of this my last will and testament; and I hereby expressly confer upon her full and complete power, as such, to administer my estate, expressly relieving her from giving bond or making any inventory, or having any appraisement of my estate, and also from making any returns to the Probate Court of Hampton county, South Carolina, or any other court of said State. And I do hereby expressly authorize and empower her, as my executrix, without the order or permission of any court, and without any notice or advertisement of any kind, to sell at public or private sale any part of my estate, and execute all conveyances, transfers, and assignments she may deem necessary to carry out the provisions of this my last will and testament."

The railroad stock of the Southwestern Railroad Company and the land referred to in item four was the property devised to her by her husband for life, and the subject-matter upon which the power of appointment was to operate. under the first item of her husband's will. The plantation called "Woodstock" and referred to in item five was her individual property. Shortly after the making of the will Mrs. Martin died, and her will was duly admitted to probate. The executors of Alfred M. Martin, who were also trustees and testamentary guardians under his last will and codicils, brought their petition to the superior court of Chatham county against the legatees of Alfred M. Martin, the executrix of Elizabeth M. Martin, and others, alleging the foregoing facts, and stating that they were advised by counsel that two possible constructions could be placed upon the will of Elizabeth M. Martin, in so far as the same relates to the railroad stock and the land which was devised to her by her husband's will with power of appointment: one construction being that the bequests, being to the respective parties in their own right and not under the terms of the will of Alfred M. Martin, are void, which would result in the property held by the life-tenant passing, under the first item of the will of Alfred M. Martin, to all the different shares; the other construction being, that Elizabeth M. Martin having devised property

which had been devised to her in her husband's. will for life, and selecting as devisees the children and grandchildren of Alfred M. Martin, her will should be so upheld and construed as to carry out the intention of both wills, so that the devises under the will of Elizabeth M. Martin should be added to the respective shares under the will of Alfred M. Martin; and that the executors of the will of Alfred M. Martin, who were also named as trustees therein, could not safely administer their trusts without a determination of the question whether the will of Elizabeth M. Martin was an execution of the power of appointment conferred upon her by item one of the will of Alfred M. Martin.

The facts being admitted, the case was referred to the judge without a jury. He held that the will of Elizabeth M. Martin was a due execution of the power of appointment under item one of the will of Alfred M. Martin; and decreed agreeably to this holding. The minor children of William E. Martin, a deceased son of Alfred M. Martin, and their guardian ad litem, excepted to the decree.

*Adams & Adams,* for plaintiffs in error.

*George W. Owens, Garrard & Gazan, Lawton & Cunningham,* and *Archibald Blackshear,* contra.

EVANS, P. J. (After stating the foregoing facts.) Perhaps upon no subject of the law have there been employed so many legal refinements, or such technical disquisition, as in the construction of powers and their mode of execution. In the greatest number of instances which have come under our observation the courts have been concerned with the determination of the validity and execution of powers which have been created in wills. The cardinal principle of interpretation of wills is to give effect to the testator's intention, where it can be ascertained from the will, and where such intention is not incompatible with established rules of law and equity. We have before us two wills: that of Mr. Martin, which gave to his wife the power of appointment by will of property devised to her for life, and that of his wife, as being in execution of that power. In reaching the ultimate points for decision, and in a consideration of the reasons which impel us to our conclusion, we shall keep constantly before us this fundamental principle of testamentary construction. The case before us may be said to rest in its main characteristics upon two questions: (1) Is the will of Mrs. Martin to be construed as an act

done in pursuance of the execution of the power given her by her husband in his will in relation to the status and title of the property after her death, which was devised to her for life? (2) Is her will a good execution of the power?

1. With respect to the first question, our own decisions go to the extent of holding, that, in the execution of a power, a direct reference to the power is not necessary, and if it be apparent that the act of the donee of the power is not fairly or reasonably susceptible of any other interpretation than as indicating an intention to execute the power, such act will be construed to be an execution of the power. *Terry* v. *Rodahan,* 79 *Ga.* 286 (5 S. E. 38, 11 Am. St. R. 420); *Middlebrooks* v. *Ferguson,* 126 *Ga.* 232 (55 S. E. 34); *Mahoney* v. *Manning,* 133 *Ga.* 784 (66 S. E. 1082); *Nort* v. *Healy,* 136 *Ga.* 287 (71 S. E. 471). These cases rest the doctrine upon the argument that by doing a thing which, independently of the power, would be nugatory, the donee of the power evinces an intention to execute the power. Thus in *Middlebrooks* v. *Ferguson,* supra, it was ruled that where the donee of a power of sale, who individually has no interest in its subject, executes, without referring to the power or instrument creating it, a fee-simple deed to land covered by it, the deed is to be construed as an execution of it. Mrs. Martin individually owned a plantation described in her will as "Woodstock." Her will purported to operate and only operated upon three items of property, viz.: (1) stock of the Southwestern Railroad Company, (2) the plantation devised to her for life by her husband, and (3) Woodstock plantation, its crops, farming implements, etc., thereon. The first two items of property were given to her for life, with power of appointment by will, and the third item was hers individually. She recognized the difference between the property in which she had only a power of appointment, and that which she owned in fee simple, in the devise disposing of "Woodstock." In explaining the liberality of her devise to her daughter Elise, the testatrix said that it was done "in recognition of the many sacrifices made by the said Elise M. Jones for me, she having unselfishly devoted the best years of her life ministering to my comfort and happiness; and it is therefore my earnest desire that she possess and enjoy Woodstock Plantation . . as fully and completely as I have in my lifetime." Now, she devised to her daughter Mrs. Bessie Cozart 300 shares of railroad stock, and

to her grandsons Alfred and Samuel Marshall each 97 shares of railroad stock, and to her daughter Mrs. Elise M. Jones 200 shares of railroad stock, and to her grandsons Alfred and Samuel Marshall and Mrs. Elise M. Jones she devised the land which was given to her for life by her husband. Thus it will be seen that she was careful to state that her gratitude to Mrs. Jones was compensated for out of the testatrix's individual property, and that she was not using the property which was devised to her by her husband in rewarding her daughter for her unselfish devotion of many years. We think the power conferred by Mrs. Martin on her executors to sell any part of her estate to carry out her will is referable to the devise of her individual property. Mrs. Martin devised the property over which she was given a power of appointment to the persons to whom she was empowered to do so, under her husband's will; her interest in this property would cease upon her death, and she could not devise it as her own property. Unless we consider her devise of the specific property, in which she had no interest after death, but with respect to which she did have a power of appointment, to such of the children and grandchildren of herself and husband as she might select, as done in pursuance of the execution of the power, then her will as to these items of property would be absolutely senseless and nugatory. Therefore we conclude that Mrs. Martin's will, with respect to the property devised to her for life, with power of appointment under her husband's will, was in pursuance of that power.

2. We come now to the question whether Mrs. Martin's will was a good execution of the power. As a preliminary to its solution, it is well to consider the testamentary plan of Mr. Martin. His will discloses that he was a man of ample fortune, and his elaborate scheme of trusts, life-estates, and remainders evinces an unmistakable purpose to keep his property among his descendants almost if not quite to the limit of time permissible under the rule against perpetuities. He made to his children and representatives of children specific devises, with trusts, life-estates, and remainders. He intended equality among his children at the time of the making of his will, and expressly said so in the third item. He anticipated that his wife would survive him and that circumstances might change after his death, and he gave to her the right to exercise an absolute and unrestrained discretion as to which of their children

and grandchildren should share in the property devised to the wife for life. In making the selection the wife was not given the power to change the trusts, terms, conditions, and limitations which he impressed on the property. If the wife executed the power conferred upon her, the persons selected by her took the property appointed to each upon the same terms, conditions, and limitations which he created in his will. If she failed to execute the power, then, upon the falling in of her life-estate, the property was to be divided among his children and the issue of deceased children, upon the terms, conditions, and limitations of his will. It would therefore seem to have been the testator's intention to confer upon his wife a power of selecting from among his children, and the issue of deceased children, such of them as she deemed proper to share in the remainder estate of the property devised to her for life, and to name them and the proportions or amount each was to take in such property by her last will; the tenure of their title to be as fixed in the testator's will. Her power extended only to the nomination of certain persons from a class, and the division of the property among her appointees, who took it subject to the terms, conditions, and limitations imposed upon each appointee in the testator's will. The quantity of interest to be taken by the appointee is expressly limited by the will of Mr. Martin, and Mrs. Martin was only authorized to divide the property, and appoint the several portions of it to the appointees. In such cases it has been considered that even at law, where the quantity of interest to be taken by the appointee is expressly limited by the instrument creating the power, and the donee is only authorized to appoint the lands over which the estate is to ride, an appointment by the donee of an interest exceeding that intended to be given to the appointee is tantamount to a regular exercise of the power of appointment. 2 Sugden on Powers, § 79.

We are cited by the plaintiffs in error to the Canadian case of Scane v. Hartwick, 11 Upper Canada Q. B. 550, as maintaining a different rule. In that case the testator devised to his wife all of his property "as long as she, my said wife, shall exist; at her decease the said property to be at her sole disposal, unto any one or other of my descendants, so as the said property and land shall be entailed in the family, from one generation to another." The wife devised to a grandson in fee, and it was held that her devise

was an excessive execution of the power, and was void. This case differs from the one in hand in this important fact: there the power was to the donee to create an estate tail, which she might have done either as an estate tail general or special, male or female; the donor did not create any estate to pass to the appointee. But in the case at bar the donor created the estate and imposed the terms, conditions, and limitations thereon, and the donee was only given the power to apportion the estate in remainder, and appoint such of his children or issue of deceased children to the allotment of her selection. At common law the rule was very rigid as to the execution of powers, and the common-law courts rejected all attempted executions as void where the donee, being given the power to appoint a particular estate, appointed one greater than that authorized by the power. The strictness of the common-law rule was modified by the English equity courts about the middle of the eighteenth century. In the leading case of Alexander *v.* Alexander, 2 Ves. Sr. 640, the rule was announced, that where a person, purporting to execute a power, has done something outside the power, then, if the things are distinguishable, the execution within the power is good and the excess void; but if the boundaries between the excess and execution are not distinguishable, the execution will be void in toto. In that case the power was to appoint among children, and was exercised by appointment to children and grandchildren, and it was held that the appointment was good as to the former and bad as to the latter. Likewise, it was held that a power to charge a particular sum will be executed by a charge of a larger sum, and the excess only will be void. Parker *v.* Parker, Gilb. Eq. 168. The equitable rule in this regard obtains in this State, and finds support in the Civil Code, § 4583, which declares: "Accident or mistake in the execution of a power, or causing the defective execution of the power, will be remedied in equity." As we have seen, the power granted to Mrs. Martin was not to create a particular estate to the donee's appointees, but to apportion property and to nominate the persons from a designated class to take such estates therein as the donor had himself created. In her will Mrs. Martin used language similar to that employed by her husband. With reference to the property in which she had only a life-estate with power of appointment, she said "I give, bequeath, and devise" to persons from the class from which her husband gave her the

power of appointment. Of course she could not technically devise property which was not hers, and we will not give the language such a technical meaning as to thwart her plain purpose of appointment. And any strained technical implication of an attempt to create a fee-simple estate will be considered a harmless effort in excess of her power. We therefore conclude that Mrs. Martin executed the power given to her in her husband's will.

*Judgment affirmed. All the Justices concur.*