COOK *et al. v.* COOK.

No. 6552.  JANUARY 23, 1929.

*F. A. Quillian* and *J. V. Poole,* for plaintiffs in error.

*Milchell & Mitchell,* contra.

BECK, P. J. (After stating the facts.)

■ Two controlling questions are presented: First, .did the death of W. M. (Monroe) Cook, who left no children, cause the title of the 23.2 acres of land to go to his brothers, M. Jerome Cook and Charles G. Cook? Second, did the contract of October 5, 1923, in which Mrs. D. Amanda Cook, party of the first part to that contract, "waived" and "quitclaimed" her life-estate to the property in question, have the effect of vesting in the plaintiff, Annie H. Cook, the life interest of Mrs. D. Amanda Cook in the land claimed by the plaintiff? By the 4th item of the will, which devised to W. M. (Monroe) Cook, subject to the life-estate of the testator's widow, the "twenty-four acres on the east side of the Powers Ferry Road," the devisee, who survived the testator, took a vested remainder, unless the remainder interest in the land thus described was affected by the provisions of item 16. Items 15 and 16 read as follows:

"15. My three sons the blacksmith and carpenter tools."

"16. My two sons Monroe and Charlie being unmarried, if either one of them dies without children, then their share to be equally divided between my other two sons."

It is contended by the plaintiffs in error that the expression "their share," occurring in item 16, refers to the devise in item 4 of the will, that is, to the twenty-four acres of land, as well as to all of the property in which either of these two sons had a remainder interest; while on the other hand the defendant in error insists that the expression "their share" has reference to the bequest contained in item 15, that is, the bequest of the blacksmith

and carpenter tools; and we are of the opinion that this latter contention is sound. If items 15 and 16 had been written as one item, there could be no doubt as to the soundness of this conclusion; and we do not think that the mere insertion of the number 16 should be given the effect of changing the construction which these two items should have if written as one item. It is a general principle that relative words are read as referring to the nearest antecedent. 2 Parsons on Contracts (9th ed.), 699; Barring v. Christie, 5 East, 398. And this rule is applicable in the construction of wills as in the construction of contracts. "The rule is, *ad proximum antecedens fiat relatio, si sententia non impediat.*" Bold v. Molineaux, 1 Dyer, 14 (b). Besides this, in the expression "their share" the word "share," if given its ordinary and usual meaning, would not refer to a devise of a certain specified and described tract of land. Share ordinarily signifies "a part or definite portion of a thing owned by a number of persons in common; one of the parts into which a sum of money or divisible thing may be divided." 35 Cyc. 453. But we would not make too strict an application of either of the rules just stated; especially we would not stick in the bark to make the application of the rules of construction to this will, which is so inartificially drawn. This is rather a case in which we should apply the often-stated doctrine, that in the construction of wills the great thing to be sought for is the intention of the testator. And the search for the intention of the testator, as well as the definition of the word "share," and the technical rule which we have stated above, lead to the same conclusion, that the word "share," in the expression "their share" as used in item 16, refers to the tools and implements mentioned in item 15, the item immediately preceding the one in which the expression "their share" occurs. Looking at the whole will, it is inferable that the testator intended that all of his children should be the object of his bounty. Why should he then make the provision that if one of the legatees died his legacy should be divided among two sons and not among all surviving children, especially as some of them were daughters? But it is plain why he should have intended that if one of the sons should die without children, the son being unmarried at the time of making the will, his "share" of the blacksmith tools should go to the other sons. Old blacksmith tools would have very little money value, but might be useful to the two sons who had been us-

ing them, but would hardly be of any use to the other legatees mentioned in the will. We think this is a reasonable construction, and that it is in accord with the intention of the testator.

■ It is further alleged that on October 5, 1923, "a certain deed was made and entered into by and between" Mrs. Amanda Cook, the life-tenant of all the property devised in the will under consideration, and the devisees who took remainder interests under the provisions of the will, by the terms of which "deed" Mrs. Amanda Cook released and quitclaimed to petitioner her life-estate in the land sued for. It further appears that the terms of this instrument called a deed were complied with; that the terms of the family settlement made by the same were executed, a survey was made showing the lands which were devised to each of the legatees, and all the parties to the instrument assented to the same; and that petitioner performed her obligation under the instrument, agreeing to its terms. Whether the instrument is a deed of conveyance or not, it is certainly a contract under the terms of which, in view of the survey and division of the property and the assent of the interested parties, a complete equity to the life interest of the widow was vested in petitioner; and having a complete equity to the life-estate and being the legal owner of the remainder, she could maintain a suit to recover the land; and a deed purporting to convey her life-estate, executed by Mrs. Amanda Cook to Jerome Cook and Charles G. Cook, under the allegations showing the circumstances under which the same was executed, was void; nor would it be effective to convey the title if executed after the execution of the "deed" or contract which was entered into between Mrs. Amanda Cook and the legatees on October 5, 1923. It follows from what we have said that the court did not err in overruling the demurrer to the petition.

*Judgment affirmed. All the Justices concur.*