JACKSON *et al. v.* FRANKLIN, executrix, *et al.*
HUFF *et al. v.* FRANKLIN, executrix, *et al.*

Nos. 10116, 10117, 10118, 10119. DECEMBER 11, 1934.

*Marvin A. Allison* and *G. Fred Kelley,* for plaintiffs in error.
*A. C. Corbett, Leo Sudderth,* and *Hope D. Stark,* contra.

GILBERT, J. These companion ejectment cases were tried together. The controlling issues are the same in all of them. On the trial the court directed verdicts for the plaintiffs, and the cases are here on exceptions to the overruling of motions for new trial.

John Morrow died testate about the year 1875. He had no near relative except a brother from whom he was estranged. In his will he stated that he was not willing that this brother "should enjoy the benefits of my years of toil," and, giving this as a reason for

what followed, devised his estate for the benefit of two ex-slaves, Mariah Morrow and Warren Morrow. The estate consisted of realty and personalty, and the realty was bequeathed to a trustee for Mariah and Warren. Item 3 of the will directed that Mariah and Warren should live in the testator's house, but they were not to bring any one else to live with them. It further directed that Mariah and Warren "shall not have any right to trade or sell the place, but they through their trustee shall enjoy the proceeds, issues, rents, and increases of said property, share and share alike." Item 7: "In the event that Mariah Morrow or Warren Henry Morrow should either die leaving no heirs, then the surviving one to have the whole interest arising in this will; but on the death of the surviving one I direct that he or she may will it to whom he or she pleases, but that during the lives of said Mariah and Warren Henry Morrow they are never to have or dispose of any part of the lands, stock, or Georgia Railroad stock outside of the rents and interest as hereinbefore stated." The trustee named died about four years after the death of the testator. Another trustee was appointed, who also died, and no other successor-trustee was ever appointed. Mariah died in 1890, leaving no heir, and thereafter for many years Warren continued in possession of the lands. Toward the end of this period he executed certain deeds to various portions of the land. Some of these were absolute deeds, and some were deeds to secure debts, which were later foreclosed, the grantees or their successors going into possession. In this way Warren lost possession of the lands, and continued out of possession from that time forward. In November, 1930, more than seven years after losing possession (his grantees or their successors, the present plaintiffs in error, being in possession during that time) he died, leaving a will appointing his wife and children (now defendants in error) to take the lands. The executor and these appointees brought the present suits; and the cases therefore present a contest between Warren Morrow's grantees and their successors on the one hand, and the appointees under his will on the other. .

While the essential issues in the cases are the same, the actual differences should, perhaps, be stated: The entire realty covered by the will of John Morrow consisted of a lot of land comprising about 250 acres. In case No. 10116, it appears that Warren Morrow became indebted to C. P. Jackson, and to secure the claim made to

him a loan deed conveying 100 acres of the lot. Jackson foreclosed under the power of sale in the deed, and the land was knocked off to C. R. Ware, who executed a conveyance back to Jackson. Jackson has been in possession ever since. In case No. 10117, Warren Morrow conveyed by warranty deed 50 acres of land to C. P. Jackson. The consideration stated in the deed was $875. C. P. Jackson conveyed this 50 acres to his wife, Mrs. Della Jackson. Possession has continued. In case No. 10118, Warren Morrow had been indebted to one Williams and executed a note to him, and to pay the note made him a deed to 35.45 acres. Williams sold this acreage to J. T. Huff. Possession has been continuous under these deeds. In case No. 10119, Warren had been indebted to T. R. and W. H. Powell, and to pay said debt executed to them a warranty deed to 54.55 acres. T. R. Powell died, and his executors and W. H. Powell conveyed the land to J. T. Huff. J. T. Huff made a warranty deed to Mrs. Nina Roberts Huff. Possession has been continuous.

Three minor points made in the motions for new trial should perhaps be decided before we proceed to a consideration of the merits of the cases. One is that there was no evidence that Josephine Franklin ever qualified as executrix, and no letters testamentary were introduced. Failure to show authority on the part of the executrix to participate as a claimant is accordingly insisted on. It is of course true that one is not in fact an executor until he has qualified; but the record here discloses proper probate of the will which nominated Josephine Franklin executrix, this probate being procured on petition of Josephine Franklin. The order establishing the will and admitting it to record gives the named executrix leave to qualify, and directs that on so doing she shall have letters testamentary issued to her. The original petition filed in the court below lays a demise from Josephine Franklin "as executrix of the last will and testament of Warren Henry Morrow." This we hold to be the equivalent of a direct allegation that she was in fact such executrix. And nowhere in the pleadings filed by the defendants is there any denial of this, or any claim that she was not entitled to be recognized as a real claimant because she had not qualified as executrix. The allegation at the end of paragraph 9 of the amended answer, that "this defendant does not admit that the said W. H. Morrow has executed any will wherein he has nominated Josephine

Franklin as his executor," does not go that far. Under these circumstances, we hold that the introduction of proof that she had qualified or the introduction of letters testamentary was not necessary.

Another point goes to the rejection from evidence of certain verbal statements made by Warren Morrow at the time of the execution of his will. This testimony was properly excluded. It was antagonistic to the terms of the will, and there was no issue as to the legality of the latter. Another is to the rejection of another alleged will of Warren Morrow. This paper was never probated, and nothing stated in it was of probative value on the trial of these ejectment cases. The court did not err in rejecting it.

Defendants, in addition to the general plea of not guilty, pleaded that Warren Morrow had been seized of the fee, and that his deeds were accordingly good; also, more than seven years possession under color of title as against Warren Morrow and the trustee. A further defense of an equitable nature was presented. This will be referred to later. As to the first proposition, it is clear that there was no fee in Warren Morrow after Mariah's death. The words in item 7, "in the event that Mariah Morrow or Warren Henry Morrow should either die leaving no heirs, then the surviving one to have the whole interest arising in this will," must be construed with the entire will. The remainder estate which the testator contemplated should vest when the survivor of Mariah and Warren was dead was not disposed of by the will. On the contrary, power to designate by will the final takers of this remainder in fee was expressly given to the survivor by this item. We have carefully considered the cases cited by counsel, and there is nothing in any of them which requires conclusions other than those we have reached in the instant cases.

As to the second defense, we hold that there was enough for the trustee here to do (*Gray* v. *Obear*, 54 *Ga.* 231) to prevent the trust from being executed under the Code, § 3737, on John Morrow's death. The death of the trustee did not affect the validity of the trust estate. Further, the trust did not extend to the remainder. The bequest is expressly (item 2) to the trustee for Mariah and Warren; and as their interests were to end when both were dead, the trust could extend no further than that. These facts being true, there can be no prescription which bars the final remaindermen. Seven years have not yet elapsed since Warren's death.

844

As to the interest of Mariah and Warren under John Morrow's will, this was one limited to the income only and the right to occupy the dwelling. The bequest being directly to the trustee, they did not have even a life-interest in the property itself. There is nothing in any part of the will which changes the clear provisions of the last sentence of item 3: "They, Mariah Morrow, colored, and Warren Henry Morrow, shall not have any right to trade or sell the place, but they through their trustee shall enjoy the proceeds, issues, rents, and increase of said property, share and share alike." In view of this, all the deeds made by Warren must be held void. The bequest for the benefit of Mariah and Warren is one of income and user; nothing more. The prohibition against trade or sale is not only one affecting the final fee, but one affecting the estate before the vesting of that fee. Warren's grantees were charged with constructive notice of the terms of John Morrow's will, and that Warren had no greater estate than that will gave him. Had Warren himself resisted the efforts of his grantees to take possession, a question of estoppel by deed would have arisen, but now that Warren is dead there is no estoppel in the case.

With reference to another point raised by plaintiffs in error, we hold that the phrase in item 7, "that during the lives of said Mariah and Warren Henry Morrow they are never to have or dispose of any part of the lands," covered a period which did not end when Mariah died, but extended further until Warren's death and prevented him from disposing of the land during the years which elapsed between Mariah's death and his own. In reaching this conclusion we are not altering the will by construction and the insertion of new phrases. We are merely giving effect to what we believe to be the true underlying intent of John Morrow as expressed by him. Being estranged from his brother and having no other near relative, he wanted these old slaves who had nursed and served him with fidelity in his declining years (item 2) to have the benefit of the use and earnings of his property as long as either of them lived. He knew that if he gave it to them outright, they would in all probability lose it and defeat the primary object he had in view: provision of a secure home and a certain income for both of them. They, during their joint lives and the life of the survivor, were the primary objects of his bounty; but at the death of the surivivor the primary objects being satisfied, he cared noth-

ing as to what became of his estate, and therefore gave the survivor the right to appoint by will the final taker in fee. There was no fee in Warren after Mariah's death, as is insisted by counsel. The testator clearly desired to prevent danger of loss through an unwise trade or sale, and this as much for the survivor after the death of one as for both during their joint lives. The authorities cited by counsel are not inconsistent with this conclusion, and in our opinion the ruling is demanded by a consideration of item 7 as a whole and its clear underlying purpose. It may be said further that to adopt the view of counsel as to this point would require the elimination of that part of item 7 which gives the right to the survivor to will the property as desired. This provision is wholly inconsistent with the idea of a fee in the survivor. If the intention had been to create a fee in Warren after the death of Mariah, that clause would not have appeared. A provision expressly limiting the power of alienation to a disposition by will precludes the idea of unrestricted alienation, which is one of the essentials of a fee.

We come now to a consideration of the equitable defense interposed in the court below. We should perhaps state that while the pleas and cross-actions contain no specific prayers which ask relief exactly in line with our conclusions, the relief to which we have decided the defendants below were entitled can be granted under the general prayers. The defense in point is to the effect that Warren Morrow's estate is insolvent if the lands be held to be no part of it, that the indebtedness arose after the death of John Morrow, and "that the land described in the deed . . was and is subject to the indebtedness due by the said W. H. Morrow, colored, and avers that a court of equity would have applied all the lands devised by the will of John Morrow to the payment of the debts of W. H. Morrow." This quotation is from the pleas and cross-actions. The averment is also made that the appointees of Warren are volunteers; and we take all these allegations together with others in the same pleadings to be sufficient to authorize, under the prayers for general relief, the judgments we have decided should be rendered, although the specific prayers relate mainly to a decree of estoppel and confirmation of the deeds Warren Morrow had made, to neither of which do we think the defendants entitled. In considering this equitable defense we are confronted with two separate principles which are aptly stated as follows: "It is very

generally held that where a life or other limited estate is granted and there follows an additional power of disposal or appointment to the tenant for life, they will not have the effect of conferring an additional right of property upon the tenant by being construed to enlarge to a fee or absolute estate the estate which had been previously expressly declared to be for life or other limited term only, but will be carried into effect only as powers over the property given to the life tenant." 31 Cyc. 1089. "Except in a few jurisdictions, it is the settled rule that, where a general power of appointment is exercised in favor of a volunteer, the subject-matter of the power will be treated in equity as assets for the payment of the debts of the donee of the power, to the exclusion of the appointee; but creditors can lay claim to the appointed estate only to the extent that the donee's own estate is insufficient to satisfy their demands." 49 C. J. 1276. The power created by John Morrow's will was a general and not a special power of appointment. 49 C. J., § 6, and cit. It should also be borne in mind that John Morrow apparently had no special interest in the husband and children, actual or possible, of Mariah, or the wife and children of Warren. Had he desired that the wife or husband and children of the survivor of Mariah and Warren should take the final remainder in fee, it would have been easy for him to say so. The real objects of his bounty were Mariah and Warren. They were the ones he wished to protect, and when they were both dead he did not care what became of the property. He permitted the survivor to say who should be the final taker. Under the rule stated above from Cyc. and the authorities cited in the text, there can be no doubt that at law a power of testamentary appointment annexed to a life estate does not enlarge that estate. And at law it is also true that only assets of the decedent are liable for his debts. The title acquired by the appointee in such a case is not derived from the decedent donee of the power, but passes to him by purchase from the original donor.

But the second rule quoted from Corpus Juris enunciates an English doctrine which has now been followed by the great weight of American authority. It is an equitable principle which, if adopted, results in a conclusion entirely at variance from that which naturally follows from an application of the other. The rule quoted from Corpus Juris has been made the subject of a

carefully prepared annotation in 59 A. L. R. 1510, in which the majority and minority holdings are considered and contrasted and a great number of cases cited; and it is sufficient here to say that we have decided to adopt the rule which has been followed by what appears to be the great weight of authority. That conclusion results in a ruling that the creditors of Warren Morrow are entitled to be satisfied out of the property here involved, before anything is allotted to Warren Morrow's appointees. The precise question now presented has apparently not arisen in this court prior to this time. In *Patterson* v. *Lawrence*, 83 *Ga.* 703 (d), 704 (10 S. E. 355, 7 L. R. A. 143), the court expressly declined to decide it. Nevertheless what was said in the *Patterson* case (and it is, we think, entirely sound in principle) is of great force in leading us to the conclusion we have here reached. The theory of the majority of the cases is that if the power be not exercised, the creditors of the donee of the power have no claim on the property; but that if the power be a general one, and if the donee be insolvent and exercise the power, it is his duty to exercise it in favor of his creditors, and an exercise in favor of mere volunteers (i. e. to persons other than his creditors) will not be permitted by a court of equity to the hurt of his creditors. The underlying thought seems to be that as it is true that when a man dies the law in dealing with his own property puts the rights of his creditors ahead of the rights of his devisees or heirs at law, so, where he has a general power of appointment over property other than his own, equity prefers the rights of his own creditors as against those of his appointees if the latter are not creditors. The principle is, that, having power to appoint the property to anybody he sees fit, it is his duty to appoint to creditors rather than volunteers. Equity follows the law, also equity regards that as done which ought to be done.

In support of the conclusion here reached we refer to the cases from the U. S. Supreme Court, other Federal Courts, Delaware, District of Columbia, Illinois, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Texas, Virginia, and England, cited in 59 A. L. R. 1510. As the author there states, there seems to be little opposing authority, although the rule has been severely criticized in several States. We have carefully considered the opposing views, and have decided that the one expressed by the majority rule above set out should be adopted

here. The reason of it seems to us to be sound, it is undoubtedly well established, and we think it should be followed by this court. An examination of the supplements to Corpus Juris since the probable date of the note in 59 A. L. R. shows only one case in which the question has been considered. McMurray *v.* State, 111 Conn. 594 (151 Atl. 252). This was a tax case, and in it the majority rule was recognized. The court said: "Though the property appointed was the property of the donor of the power, it was in equity charged with the payment of the debts of the donee to the extent that his own estate was insufficient to satisfy their demands. . . The doctrine that the appointed property is chargeable with the debts of the donee was settled very early by the English chancery courts, apparently upon the principle of fair dealing that a man ought to pay his debts if he could. Though recognizing the logical difficulty of requiring such payment out of property of which the debtor was not the actual owner, the courts have held that the rule has been too long established as a rule of property to be set aside because of doubts as to the technical soundness of the reasons on which it was originally established." Finally it should be added that the U. S. Supreme Court has in effect fully approved the English rule. U. S. *v.* Field, 255 U. S. 257 (41 Sup. Ct. 156).

The cases at bar proceeded to trial below on two theories: first, that the lands sued for belonged generally to the estate of Warren Morrow (joining the executrix as party plaintiff can mean nothing else) ; and second, that it belonged to the appointees under Warren's will. Neither theory is correct. The appointees were not proper parties plaintiff. They have no present right to recover the lands, and will never have any right to any part of them, unless it should finally be shown that it is not necessary for the executor to sell all the lands to secure the funds necessary for the payment of the debts of Warren Morrow. While the executrix had no right, on the record now before us, to recover the lands as general assets of the estate of Warren Morrow, we think that the course indicated in U. S. *v.* Field, supra, should be adopted. The executrix should recover the land and administer it, so far as may be necessary for the payment of the creditors; this "as a matter of convenience, and because she represents the rights of creditors, and not generally by virtue of her office." Her right goes no further than this, and the decree entered should have so specified. For the convenience of

parties and counsel we sum up the more important items in our decision as follows:

1. The security deed to the 100 acres executed by Warren Morrow to C. P. Jackson, the deed under power from Jackson as attorney in fact to Ware, and the deed from Ware to Jackson were void. Warren had no estate of any kind in the lands covered by these deeds.

2. Jackson, on the present record, is an unsecured creditor of Warren Morrow's estate to the amount of the principal and interest of the notes given him by Warren, less the reasonable value of the net rental of the land of which he took possession, from the time of taking possession.

3. The warranty deed to the 50 acres executed by Warren Morrow to Jackson and the deed to the same land from Jackson to Mrs. Jackson were void. When possession of this 50-acre tract is secured by the executrix, there will be a breach of Warren Morrow's warranty, and this breach will make Jackson and/or Mrs. Jackson a creditor of his estate to the extent of the actual purchase-money paid to Warren, with or without interest, adjusted as indicated by the Code, § 4400.

4. The warranty deed to the 35.45 acres executed by Warren Morrow to J. C. Williams and the quitclaim deed from Williams to John T. Huff to the same land conveyed no title. The quitclaim deed passed on to Huff the warranty of Warren in his deed to Williams (the warranty being to Williams and his assigns), and therefore, on breach, John T. Huff will be a creditor of Warren's estate to the amount of the purchase-money paid by Williams to Warren Morrow. Interest to be dealt with as stated in paragraph 3 above.

5. The warranty deed from Warren Morrow to T. R. and W. H. Powell to 54.55 acres, the deed from Powell and Mrs. Powell as executor to Huff, and the deed from Huff to Mrs. Nina Roberts Huff conveyed no title, but the breach of Warren Morrow's warranty is to be treated in the same way as the foregoing.

We have carefully considered all the grounds set out in the motions for a new trial, and do not deem it necessary to pass specifically upon any points made other than those hereinabove decided. The judgments are affirmed on condition that on the return of the remittiturs, and before the judgments of this court are made the judgments of the court below, the plaintiff John Doe will amend

his pleadings by striking all demises in the petitions and their amendments except the ones from the executrix; that he will consent that the final decrees be so amended that they shall give the executrix the right to recover the lands for the sole purpose of administering them so far as may be necessary to satisfy the creditors of Warren Morrow, the overplus, if any, to go to the appointees of Warren Morrow. On failure to comply with this condition the judgments in the four cases are reversed.

*Judgments affirmed on condition. All the Justices concur.*