REGENTS OF THE UNIVERSITY SYSTEM *et al. v.*
TRUST COMPANY OF GEORGIA, executor, *et al.*

No. 12254. July 1, 1938. Rehearing denied July 14, 20, 1938.

*M. J. Yeomans, attorney-general, Ellis G. Arnall, O. H. Dukes, Marion Smith,* and *Hamilton Lokey,* for plaintiffs in error.

*Spalding, Sibley, Troutman & Brock, Arnold, Gambrell & Arnold, Whitaker, Whitaker & Terrell,* and *Mitchell & Mitchell,* contra.

Bell, Justice. A husband died, leaving a will bequeathing property in trust for the benefit of his wife until her death, and conferring upon her a power of testamentary disposition as to all or substantially all of the remainder. The main question for decision is whether the wife, under the terms of the will subsequently executed by her, effectuated a valid exercise of the power. Francis E. Brownell died testate in October, 1930. His will, executed in 1926 and duly probated, contained the following provisions: "I give, bequeath, and devise all my property and estate, real and personal, and wheresoever the same may be situated, that I may own or may have any interest in at the time of my death, to my beloved wife Florence H. Brownell and the Trust Company of Georgia as trustees for the following uses and purposes: The said trustees shall hold my entire estate in trust for the use and benefit of my beloved wife Florance H. Brownell for and during her natural life. My said wife is hereby specially empowered to bequeath and devise all or any part of the property of the trust estate hereby created, to such legatee or legatees as she may see fit, so as to vest complete fee-simple title free from any remainder or limitation whatever; but if she should fail by her last will and testament to specifically devise or bequeath any part or the whole of said property unto specific legatee or legatees or should die intestate, then upon her death all the property not so devised or bequeathed by her to specific legatee or legatees shall go in remainder to my two nieces Florence P. Brownell and Lucia Brownell McNear, daughters of my deceased brother Charles H. Brownell, equally share and share alike, absolutely in fee simple, except the sum of one hundred dollars ($100) which I give in remainder to my nephew Clarence D. W. Brownell, son of my deceased brother Clarence D. W. Brownell, and one hun-

dred ($100) dollars which I give in remainder to my nephew Charles L. Brownell, son of my deceased brother Charles H. Brownell. I empower the said trustees to preserve, manage, and control said trust estate, and to sell and convey in fee simple any property herein devised or bequeathed unto them as trustees as aforesaid, at public or private sale, on such terms and in such manner as they may deem best, and to reinvest the proceeds thereof in other property as they may deem best, all absolutely in their discretion and without obtaining any order of any court. After paying all the expenses of administration of my estate and of administering the trust, and the taxes and all other lawful charges, the said trustees shall turn over to my said wife, Mrs. Florence H. Brownell, the entire balance of the income of the trust estate hereby created, and shall preserve the corpus thereof for the benefit of such persons as will be entitled to it after her death. I appoint as executors of this my last will and testament my beloved wife Mrs. Florence H. Brownell and the Trust Company of Georgia." Both executors qualified.

The wife, Mrs. Florence Haile Brownell, executed a will in July, 1931, and died in December, 1936. Her will was duly probated. Item 3 disposed of described personal effects and a bond of the face value of $100. This item is not in controversy. Item 4, which *is* in controversy, chiefly but not solely on the question whether under the will of her husband she was restricted to disposition in fee simple, provided as follows: "Item four (4): My dear husband Francis E. Brownell, by his last will and testament duly probated and recorded in the court of ordinary of Fulton County, Georgia, bequeathed and devised all his property and estate real and personal to myself and the Trust Company of Georgia as trustees for my use and benefit for and during my natural life, and empowered me to bequeath and devise all or any part of the trust estate thereby created to such legatee or legatees as I may see fit. By virtue of the power conferred on me by said will of my husband, I give, bequeath, and devise all the property real and personal of said trust estate (except any articles that may be included in the bequests made in item third) unto the Trust Company of Georgia as trustee for the following uses and purposes: The said trustee shall hold, preserve, manage, and control all said property for the purpose of paying to Mrs. Florence P. Brown,

wife of Marcus F. Brown, of Tampa, Florida, one hundred ($100) dollars per month for and during her lifetime, and to Mrs. Lucia Brownell McNear of 320 Plant Avenue, Tampa, Florida, one hundred ($100) dollars per month for and during her lifetime, and ten ($10) dollars per month to my laundress Emma Sherwood, who now resides on Larkin Street in Atlanta, Georgia, for and during her lifetime and ten ($10) dollars per month to my cook Allene Turner, of Atlanta, Georgia, for her lifetime. The said trustee shall also pay the sum of one hundred ($100) dollars to my husband's nephew Clarence D. W. Brownell, and the sum of one hundred ($100) dollars to my husband's nephew Charles L. Brownell, which sums of 100 dollars each I give absolutely to said Clarence D. W. Brownell and Charles L. Brownell respectively. Upon the death of any of said four named beneficiaries (Florence P. Brown, Lucia Brownell McNear, Emma Sherwood, and Allene Turner) the income directed to be paid to such deceased during her lifetime shall thereafter fall into and become a part of the corpus of the trust estate, which shall be allowed to accumulate until the death of the last one of said four beneficiaries, to wit, Florence P. Brown, Lucia Brownell McNear, Emma Sherwood, and Allene Turner. Said Trust Company of Georgia and its successors shall have power to sell, convey, transfer, and dispose of any of the property of said trust estate publicly or privately, without the order of any court or authority, and to invest and reinvest the proceeds in such manner as it may deem best, without the order of any court or authority. At and after the death of all four of said beneficiaries (Florence P. Brown, Lucia Brownell McNear, Emma Sherwood, and Allene Turner) the entire corpus of said trust estate, real and personal, except said 200 dollars given to Clarence D. W. Brownell and Charles L. Brownell and except such articles as may be included in the bequests made in item third, shall go to and vest in fee simple in the Trustees of the University of Georgia for the use and benefit of the Georgia School of Technology, of Atlanta, Georgia, and to be known as the 'Francis E. Brownell Fund'; the corpus thereof to be preserved and invested and the income thereof to be used for such purposes of said School of Technology as its governing authorities may deem best, who shall have full power to sell and dispose of any of said property publicly or privately and invest and reinvest the proceeds and

manage and control said property and fund without the order of any court or authority; but none of said fund shall ever be used for any other department or branch of the University of Georgia except said Georgia School of Technology. If the Trustees of the University of Georgia should be deprived of their authority over the Georgia School of Technology, the corpus of said trust estate shall go to and vest in such legal governing body of said School of Technology as may be authorized to receive said 'Francis E. Brownell Fund' for the benefit of said Georgia School of Technology, and with the same powers."

The Trust Company of Georgia, after qualifying as executor and trustee under this will and becoming thus the executor and trustee under both wills, was notified by Mrs. Florence P. Brown, née Brownell, and Mrs. Lucia Brownell McNear, the two nieces mentioned in the will of the husband, that they claimed the estate bequeathed in item 4 of the wife's will, upon the asserted ground that the power conferred upon the wife had not been validly exercised, and therefore that the estate was vested in the nieces under the will of the husband. The Trust Company of Georgia, as executor and trustee under both wills, thereupon instituted the present action for construction and direction, designating as defendants the two nieces mentioned, and others, but not the State, or the "Regents of the University System of Georgia," successor to the "Trustees of the University of Georgia;" this for the alleged reason that neither the State nor the regents could be sued without the consent of the State and the Regents of the University System of Georgia. Both intervened, however, alleging that the power was validly exercised, and praying for a decree that the estate be vested in them for the benefit of the Georgia School of Technology, as bequeathed in the will of Mrs. Brownell.

The case was submitted to the determination of the judge without a jury, who entered a decree holding that the will of Francis E. Brownell did not authorize his wife to dispose of any part of his estate except in fee simple, and that this was not done in the will executed by her. The evidence showed that the value of the estate was between $100,000 and $125,000. Except as to the bequests of $100 each to the two nephews of the husband, the judge entered a decree awarding the estate to Mrs. Florence P. Brown and Mrs. Lucia Brownell McNear. To this judgment the State of

Georgia and the "Regents of the University System of Georgia" excepted. The Trust Company of Georgia also excepted, but the writ of error sued out by it has been dismissed for reasons stated in *Trust Company of Georgia* v. *Brown,* 186 *Ga.* 496. The case now under consideration is that presented by the writ of error sued out by the State of Georgia and the Regents of the University System.

■ The main or composite question is whether Mrs. Florence Haile Brownell validly exercised the power conferred upon her by the will of her husband, Francis E. Brownell. The general inquiry, however, involves several intermediate questions. The will of the husband, after bequeathing his entire estate to his wife and the Trust Company of Georgia *in trust* for the use and benefit of the wife for and during her natural life, proceeded as follows: "My said wife is hereby specially empowered to bequeath and devise all or any part of the property of the trust estate hereby created to such legatee or legatees as she may see fit, so as to vest complete fee-simple title free from any remainder or limitation whatever; but if she should fail by her last will and testament to specifically devise or bequeath any part or the whole of said property unto specific legatee or legatees, or should die intestate, then upon her death all the property not so devised or bequeathed by her to specific legatee or legatees shall go in remainder to my two nieces Florence P. Brownell and Lucia Brownell McNear . . equally share and share alike, absolutely in fee simple, except the sum of one hundred dollars ($100) which I give in remainder to my nephew Clarence D. W. Brownell, . . and one hundred ($100) dollars which I give in remainder to my nephew Charles L. Brownell." These bequests to the nephews are not in controversy. Nor is item 3 of the wife's will. After thus eliminating these items, we may for convenience speak of the power as though it related to the entire estate of the husband in remainder, according to his will. In substance, the following contentions are made by the nieces, Mrs. Brown and Mrs. McNear: (1) That the will of Francis E. Brownell conferred power upon his wife to dispose of his estate in fee simple, and not otherwise; whereas she did not bequeath the estate in fee simple as required. (2) That the power was in effect restricted to a mere designation of the legatees who should finally take the property under the will of her husband,

and was further restricted to appointment as among the nieces and nephews mentioned therein; and that neither of such restrictions was observed. (3) That the will of Mrs. Brownell, in devising the property in trust to the Trustees of the University of Georgia for the use and benefit of the Georgia School of Technology, violated the rule against perpetuities. (4) That the power required appointment to a specific legatee or legatees, and that the appointment to the "Trustees of the University of Georgia" in trust for the use and benefit of the Georgia School of Technology was not a compliance with this requirement, for several reasons stated.

In our view of the case, we may assume that none of the property in controversy was bequeathed in fee simple by Mrs. Brownell. This brings us to the first point for determination. Was the power conferred upon her restricted to disposition in fee simple? Undoubtedly she was authorized to appoint the estate in fee simple. This is the greatest estate that any person can hold in property, and therefore any other character of estate would be less than she was empowered by her husband to confer. Code, § 85-501. In 21 R. C. L. 804, § 37, it is stated: "It is well-settled law, that, under a general power to appoint an estate in fee, the donee may appoint a lesser or qualified estate in the property, and that it is not necessary to execute the power in its entirety and to its full extent. This is held upon the principle that the lesser is included in the greater. It is not an excessive exercise of the power, but a partial execution of it, which has always been held to be valid. Accordingly, under a power to appoint a fee, the donee may appoint a life-estate with a power to appoint a fee; and where there is a power to grant personal property as a gift, the donee may loan the property under the power. The donee of an absolute power also may appoint a trust estate. But where an appointment is to be made of a particular estate, or in a certain manner, and in no other way, the negative words must control, and the donee is not permitted to appoint a different estate, or in any other manner." In 49 C. J. 1266-7, §§ 53-6, it is stated: "The donee of a power of appointment can appoint such an estate or interest only as is authorized by the instrument creating the power, and not a greater or lesser one. If, however, there is no restriction as to the estate or interest to be raised by the execution of the power, or if

the matter is expressly left to the discretion of the donee, he may appoint any estate or interest which the donor of the power could have created or transferred. . . An unrestricted power to appoint or dispose of property authorizes the appointment of a fee or absolute interest, although no words of inheritance are contained in the power; but a fee can not be appointed where the power authorizes the appointment of a less estate only. . . Under a general power to appoint, or a power to appoint limited merely to the objects, the donee is not restricted to an appointment in fee simple, but may appoint lesser or qualified estates in the subject matter; but if the power expressly or by clear implication requires that an estate in fee, and no other, shall be appointed, a less estate than a fee can not be given by the donee; and so it would seem that where the class of objects of a special power contains but one member at the time the power is executed, the donee has no authority to appoint an estate less than a fee. . . Under a power of appointment, either general or special, containing no restriction as to the nature of the estate to be raised, the donee is not limited to an appointment of the legal estate, but may execute the power by an appointment in trust for the objects of the power, except where it appears, either expressly or impliedly, from the instrument creating the power that the donor intended the appointees to take, not in trust, but absolutely." See also 69 C. J. 843, § 1951. As to construction, the rule is stated as follows in 49 C. J. 1260, § 34: "Powers are to be construed in accordance with the intention of the donor or grantor, as determined under the rules relating to the construction of instruments generally. A power general in terms will not be cut down to a special or particular power, unless an intent to do so is apparent from the instrument conferring the power; and, on the other hand, a power can not be extended beyond its express terms and the clear intention of the donor. A particular intent will be made to yield to the general intent, where they are inconsistent with each other."

So far as pertinent, the statements thus quoted seem to accord in a general way with numerous decisions cited in the briefs in this case, and, as we think, are not questioned by counsel on either side. Accordingly, in reference to the propositions stated, there would seem to be little, if any, need either for discussion or for citation of. cases. In *Grayson* v. *Germania Bank,* 140 *Ga.* 467,

472 (79 S. E. 124), it was said: "Perhaps upon no subject of the law have there been employed so many legal refinements, or such technical disquisition, as in the construction of powers and their mode of execution. In the greatest number of instances which have come under our observation the courts have been concerned with the determination of the validity and execution of powers which have been created in wills. The cardinal principle of interpretation of wills is to give effect to the testator's intention, where it can be ascertained from the will, and where such intention is not incompatible with established rules of law and equity." Manifestly the donee of a power can do only what he or she is empowered to do, and can do that only in the manner prescribed. *Porter* v. *Thomas,* 23 *Ga.* 467; *Satterfield* v. *Tate,* 132 *Ga.* 256 (64 S. E. 60); *Cochran* v. *Groover,* 156 *Ga.* 323 (118 S. E. 865); *Jackson* v. *Franklin,* 179 *Ga.* 840 (177 S. E. 731); *Newton* v. *Bullard,* 181 *Ga.* 448 (182 S. E. 614). Considering it to be the law that under a power to appoint an estate in fee simple the donee may appoint a lesser or qualified estate in the property, unless "the power expressly or by clear implication requires that an estate in fee, and no other, shall be appointed," let us examine the will of Francis E. Brownell for the purpose of determining whether the power conferred upon his wife to appoint all or any part of his estate in fee simple expressly or impliedly required that such an estate and no other should be appointed by her. We quote again the *first* clause of the pertinent item of his will: "My said wife is hereby specially empowered to bequeath and devise all or any part of the trust estate hereby created to such legatee or legatees as she may see fit, so as to vest complete fee-simple title free from any remainder or limitation whatever." There has been some discussion as to whether this is a general or a special power. We will not undertake a classification in this regard, except to say that the word *specially* in the phrase "specially empowered" seems to have been employed in the sense of *expressly.* 49 C. J. 1250, § 6, citing Harris *v.* Harberson, 9 Bush (72 Ky.), 397. We can not agree with counsel for the defendants in error that the language "so as to vest complete fee-simple title free from any remainder or limitation whatever" involved a restriction upon the wife to appointment of estates in fee simple and nothing less. While the expression "so as" may sometimes import a proviso or condition,

and the phrase "free from any remainder or limitation whatever" was in this instance apparently unnecessary, it is our opinion that the former was employed here as pointing to and introducing the extent of the power, and that the latter is a mere tautological expression, naturally induced by the circumstances. Be it remembered that in the same will, and in the next preceding clause, the testator had placed his entire estate in trust for the benefit of his wife for and during her natural life, with direction to the trustees to "preserve the corpus thereof for the benefit of such persons as will be entitled to it after her death." This is the character of the estate with which the wife was to deal, and he is now telling her that in disposing of it she will not be bound by any like conditions, but that she may devise all or any part of it to such legatee or legatees as she may see fit, so as to vest the complete fee-simple title "free from any remainder or limitation whatever." In other words, he is contrasting the character of the estate which he himself has just created with that which she is empowered to appoint in such will as she might thereafter execute.

Having thus determined that the *first* clause of the power contained no requirement as to the kind or quantum of estate which the wife should appoint, we will now inquire whether the next clause, beginning with the word "but," either expressly or by clear implication embodied such requirement. The second clause reads as follows: ". . but if she should fail by her last will and testament to specifically devise or bequeath any part or the whole of said property unto specific legatee or legatees, or should die intestate, then upon her death all the property not so devised or bequeathed by her to specific legatee or legatees shall go in remainder to my two nieces Florence P. Brownell and Lucia Brownell McNear." We see nothing here which can be reasonably taken as cutting down the unlimited power just previously expressed, as to the kind of estate which the wife might devise. Compare *Smith* v. *Slade,* 151 *Ga.* 176 (2) (106 S. E. 106); *Moore* v. *Cook,* 153 *Ga.* 840 (2) (113 S. E. 526). The second clause *does* require as a condition of the power, as to any part or the whole of the estate, that the wife or donee shall specifically devise or bequeath the same, and further provides that if she should fail to do this or should die intestate, then all of the property not so devised or bequeathed by her shall go in remainder to the two named nieces.

The words "specifically devise or bequeath" as used in this clause, and the further words "specific legatee or legatees" as twice employed in the same clause, when considered together and with the context, would indicate an intention or desire that the power should be executed by specific legacies or devises, as opposed to disposition by residuum, or to residuary legatees. A special legacy is one which operates on property specifically designated. Code, § 113-808. A specific legatee, of course, is one to whom is bequeathed a particular thing, as distinguished from all others of the same kind. 69 C. J. 914. The will of Mrs. Brownell purported to bequeath to the Trustees of the University of Georgia the "entire corpus" including accumulated interest, less monthly allowances from the income to four named persons during their lives respectively, and except $100 each to two of her husband's nephews. This was a specific legacy to the Trustees of the University of Georgia. *Bank of Statesboro* v. *Simmons,* 164 *Ga.* 885 (139 S. E. 661); *Greene* v. *Foster,* 178 *Ga.* 319, 321 (173 S. E. 91). While the nieces might be considered as contingent remaindermen under the will of the husband, he also placed them in a status similar to that of residuary legatees under his will. He said to his wife that she might by specific devise dispose of all or any part of this property, but that the residue, if any, should go to his nieces. The only condition is that the wife can not act except by specific bequest or devise. After exhausting her desires in regard to things specific, she will not dispose of the remainder by the mere nomination of residuary legatees. The husband is attending to that by designating his own nieces as beneficiaries of such remainder, if any. It should be noted that we are not discussing here any question as to whether the Trustees of the University of Georgia or its successor, the Regents of the University System, could take as a specific legatee. That question will be dealt with later in this opinion.

From what has been said we are of the opinion that the only condition expressed in the second clause was that as to any part or the whole of the estate which the wife might undertake to appoint she was restricted to appointment by specific legacies. We can not agree with the contention that the phrase "not so devised or bequeathed" refers to anything contained in the first clause. On the contrary, it relates to the *nearest antecedent,* namely, the

requirement as to devising or bequeathing any part or the whole of the estate unto specific legatee or legatees. This is in accord with the ordinary rule of construction, which though subject to exception where a different intention appears, should, as we think, be applied in this case as an aid in determining intention. *Cook v. Cook,* 167 *Ga.* 723, 727 (146 S. E. 548). The same rule is expressed in the Code, § 102-103, where it is declared that *"Preceding* and *aforesaid* usually mean next before, and *following* next after, unless the context requires a different signification." If we should write into the second clause a limitation that the property must be appointed in fee simple and not otherwise, we would in so doing be adding to the instrument something which is not clearly implied, or, as we might say, something that is clearly *not* implied. Words to this effect could have been so easily inserted by the testator had any such meaning been intended by him. Viewing both clauses together and considering the power as a whole, we are impressed by the fact that the wife was authorized to devise all or any part of the property unto such specific legatee or legatees "as she may see fit," which is a power without limitation in regard to beneficiaries. It is presumed that Mr. Brownell was possessed of normal characteristics, and it is hardly supposable that he would have been willing for beneficiaries to be chosen by his wife from all the world, but at the same time would control her as to the kind of estate which she might devise. Would he as a reasonable man have said to her, "You may give $100,000 to whomsoever you please, provided you give it absolutely and without condition; but you can not bestow the slightest benefit on my nearest relative or dearest friend by any sort of estate on condition"? We can not think so. It is said, however, that the subsequent will of his wife, including provisions not quoted herein, tends to show a complex on her part for creating involved estates, and that the husband must have known of this trait and sought to guard against it. This circumstance does not authorize a different conclusion as to the meaning of the power. If the husband had felt any fear from such cause, it seems that he would have spoken in express terms to circumvent it, even if in that case he would have entrusted the power upon any conditions.

On the question whether the particular power was restricted to disposition in fee simple, none of the several decisions which have

been called to our attention seems to be directly in point; and in view of the language of this will, it would be a most striking coincidence if any such could be cited. See *Comer* v. *Citizens & Southern National Bank,* 182 *Ga.* 1, 5 (185 S. E. 77). The defendants in error apparently rely most strongly upon the decisions in Hooper *v.* Hooper, 203 Mass. 50 (89 N. E. 161, and Myers *v.* Safe-Deposit & Trust Co., 73 Md. 413 (21 Atl. 58). In the Hooper case it appeared that a will devised certain property to trustees for the benefit of H. for life, and directed the trustees on her death to pay over and distribute her share of the property to and among her children in such manner and in such proportions as she might by will direct. She by will appointed the fund to trustees, to divide among her surviving children and the issue of any deceased child, and provided for an accumulation of income for the benefit of her grandchildren. H. died, leaving no children or grandchildren surviving her, except defendant, a minor fifteen years of age. The court held that the defendant took the entire property under her grandfather's will, freed from the trust attempted to be created by H. In the opinion, it was said: "The language of this power is that upon the decease of the equitable life tenant the trustee shall 'pay over and convey' the property 'to such of her children,' 'and in such proportions' as she may by will direct. She is simply to select the persons among the class designated, and is to determine the proportion each one shall take. This language evidently implies a termination of the trust and an absolute estate in the distributees. There is no hint of any other kind of estate, nor any indication of a power in the donee to create new trusts. And this view becomes all the more emphatic when the provision for the husband is considered; for that provision shows that when the donor of the power thought of an equitable estate she used appropriate language." In the Myers case it was held that a devise of an estate to testator's widow for life, with remainder to such of testator's children and grandchildren as she shall by will appoint, and, in default of such appointment, the estate to pass as if testator had died intestate, creates only a special power in the widow to apportion an absolute estate in the remainder among such of testator's children and grandchildren as she sees fit; and her execution of the power by creating trusts for life, as to five-ninths of the estate, in some

of testator's children and grandchildren, with limitations over, is void. It is apparent that the powers dealt with in these two cases were materially different from that involved in the case at bar. It is our conclusion that the power was not restricted to disposition in fee simple, and that any lesser estate could therefore be appointed. We have also reached the conclusion that it was not restricted to a mere designation of the legatees who should finally take under the will of the donor. Where a power of appointment is limited to the nomination of certain persons from a class or from persons named or indicated by the donor, the selection of outsiders can not be sustained as a valid exercise of the power. *Grayson* v. *Germania Bank,* 140 *Ga.* 467 (supra) ; 49 C. J. 1262, § 40. The wife in this case, however, was not limited as to the persons or as to a class of persons from whom to appoint beneficiaries; and so there is no merit in the contention that the appointment should have been made only as among the nieces and nephews mentioned in her husband's will.

■ It is further contended that the devise to the Trustees of the University of Georgia for the use and benefit of the Georgia School of Technology violates the rule against perpetuities. As we have seen above, the power conferred upon the wife was unlimited as to the quantum or kind of estate which she might appoint. She could so dispose of the property by will as to vest in the beneficiary or beneficiaries a fee-simple estate or any estate of lesser rank. Since a fee-simple estate is the greatest estate that can be owned or conveyed, anything different must be less. The courts, however, will not permit the execution of a power where the effect will be to create an estate obnoxious to the rule against perpetuities. 21 R. C. L. 805, § 38. So the question is whether the devise to the Trustees of the University of Georgia violates the rule. If the donor of the power could have made a similar bequest, his wife could do the same under the power conferred upon her. The rule against perpetuities as it exists in this State is given in the Code as follows: "Limitations of estates may extend through any number of lives in being at the time when the limitations commence, and 21 years, and the usual period of gestation added thereafter. A limitation beyond that period the law terms a perpetuity, and forbids its creation." Code, § 85-707. "Every educational purpose" is a proper matter "of charity for

the jurisdiction of equity." Code, § 108-203. The devise to the Trustees of the University of Georgia was a trust or equitable estate for the benefit of an educational institution. Being thus made for an educational purpose, it did not, under the other facts of the case, violate the rule. "It is frequently stated that charities and trusts for charitable uses are not within the scope of the rule against perpetuities, for the reason that the principles of the common law and the provisions in constitutions and laws relating to perpetuities are designed only to prevent the entailing of estates and the accumulation of individual wealth and the creation of private trusts. This is true when the gift is made in such a way that the interest vests in the charity immediately or within the time permitted for the vesting of future interests, and in such cases a public or charitable trust may be perpetual in its duration, and the property may be left to trustees who may be self-perpetuating." 21 R. C. L. 310, § 38. See also 48 C. J. 986-990, §§ 78-80. In Jones v. Habersham, 107 U. S. 174 (2 Sup. Ct. 336, 27 L. ed. 401), it was held by the United States Supreme Court that the Georgia rule against perpetuities did not apply to a charitable devise. Accordingly, under the facts appearing, there is no merit in the contention that the devise in trust to the Trustees of the University of Georgia for the use and benefit of the Georgia School of Technology was invalid as a perpetuity. See, in this connection, *Trust Company of Georgia* v. *Williams,* 184 *Ga.* 706 (192 S. E. 913).

The final question for determination is whether the devise just referred to was made to a specific legatee within the terms of the power. The meaning of the terms *specific legacy* and *specific legatee* was stated in the first division of this opinion. By the act of January 27, 1785, "The Trustees of the University of Georgia" was made a body corporate. The corporation existed under this name until the act of August 28, 1931 (Ga. L. 1931, p. 20). *State of Georgia* v. *Regents of the University System of Georgia,* 179 *Ga.* 210, 216 (175 S. E. 567). The will of Mrs. Brownell by which she undertook to execute the power, though executed in July, 1931, did not become effective until her death in December, 1936. Code, § 113-401. In the meantime the corporate name "The Trustees of the University of Georgia" had been changed by the act of August 28, 1931, to "Regents of the

University System of Georgia." The corporation was continued, and the University System was expressly made to include the School of Technology. Ga. L. 1931, p. 20, §§ 45, 47 (Code, §§ 32-101, 32-103). Section 49 of that act was as follows: "Any trust fund or property, real, personal, or mixed, that may have been heretofore created by will or otherwise as a fund or gift or donation or devise to any board of trustees of any of the institutions hereinbefore mentioned, or to any executor or trustee to and for the use, benefit, or behoof of any such institution, shall not lapse by virtue of any of the provisions of this act, but the same shall remain valid and of full force and effect, and such beneficial interest under any such deed of gift or will or other conveyance shall vest in said Board of Regents as trustee to and for the use, benefit, and behoof of the institution intended to be benefited by said gift, devise, or other conveyance in its favor." Code, § 32-118. Section 71 provided as follows: "That title to all real, personal, and mixed property of whatever nature now held by the Boards of Trustees or Directors of each of the institutions named in section 47 . . of this act shall vest in the Board of Regents of the University System of Georgia, to be held by said board in trust for the benefit and use of the institutions entitled thereto, it being the purpose and intent of the Legislature that the Board of Regents shall hold title to the property or assets of each institution, so that each institution shall receive the use and benefit of the property devoted to its use, and in no event shall the property or assets of one institution be subject to the liabilities or obligations of any other institution; provided, however, that this restriction shall not prevent the Board of Regents from utilizing the facilities, educational or otherwise, of one school for the advance or assistance of another." Code, § 32-119. It follows that although at the time of the effective date of the will of Mrs. Brownell, the corporate name "The Trustees of the University of Georgia" had been changed to the "Regents of the University System of Georgia," the corporation under the new name was empowered to accept exactly such a devise as was made by Mrs. Brownell, unless the power had been changed by the act of February 14, 1935 (Ga. L. 1935, p. 171). Sections 1 and 2 of that act were as follows:

"Section 1. That the corporation created under section 45 of the act approved August 25, 1931, as embodied in title 32, section

32-101, of the Code of Georgia of 1933, and known as 'Regents of the University System of Georgia,' is hereby declared to be a governmental agency of the State of Georgia, and all property held by said corporation under said act of August 25, 1931, as embodied in title 32 of the Code of Georgia of 1933 is hereby declared to be the property of the State of Georgia, and subject to all the limitations and restrictions imposed upon other property of the State of Georgia by the constitution and laws of this State. The members of the Board of Regents of the University System of Georgia, as provided for by said act, are hereby declared to be public officers of the State of Georgia and subject, in all their actions as such, to all the limitations and restrictions imposed by the constitution and laws of this State upon other public officers.

"Sec. 2. The terms and conditions of any and all donations, gifts, or bequests, heretofore made or to be made in the future, to the Trustees of the University, the Board of Regents of the University, or to the University System, or to any branch or division thereof, shall not be affected by the provisions of this act."

While in section 1 the corporation was incorrectly referred to as having been created under section 45 of the act of 1931, this inaccuracy is not material. Whether or not the corporation was itself abolished by the act of 1935, it was nevertheless declared to be a governmental agency of the State, and its power to accept a bequest of this nature was retained. While it was also provided that the property then held by the corporation should "be the property of the State," and "subject to all the limitations and restrictions imposed upon other" State property, these provisions were declared not to affect the terms and conditions of any previous or later donation or bequest, whether made to the Trustees of the University, the Board of Regents, the University System, or to any branch or division thereof. It is presumed that Mrs. Brownell knew the law and was satisfied with the will that she had made, notwithstanding the new legislation. 69 C. J. 49, § 1106. The "Regents of the University System of Georgia" may therefore be considered as the trustee nominated by her to receive and hold the property for the use and benefit of the Georgia School of Technology. The bequest then is clearly made to a specific legatee, and to a specific legatee capable of taking. 69 C. J. 166-170, and see specially § 1195. Furthermore, she provided in her will

that "If the Trustees of the University of Georgia should be deprived of their authority over the Georgia School of Technology, the corpus of said trust estate shall go to and vest in such legal governing body of said School of Technology as may be authorized to receive said 'Francis E. Brownell Fund' for the benefit of said Georgia School of Technology, and with the same powers." Nor will a trust fail for the want of a trustee. Code, § 108-302.

There is no merit in the contention that the devise fails because the devisee, being an agency of the State, is not subject to suit without the consent of the State. Under the foregoing statutes, the agency in accepting this equitable estate on the conditions specified would necessarily subject itself to equitable jurisdiction, impliedly consenting thereby, on authority from the State, to be sued as any other trustee might have been, in reference to the subject-matter. See, in this connection, *Harrison* v. *State Highway Department of Georgia,* 183 *Ga.* 290 (188 S. E. 445).

In conclusion, the will of Francis E. Brownell conferred the power of unlimited disposition upon his wife, as related to the kind or quantum of estate which she might devise. She could bequeath his estate in fee simple to such specific legatee or legatees as she saw fit. Under this power she was not compelled to bequeath the estate in fee simple, but could devise lesser estate or estates. She could do this as to "all or any part of the trust estate" created by her husband. She did not fail by her last will and testament to make a specific devise as to the property here in question. She did not die intestate. All of the conditions of the power conferred upon her having been met as related to the property in dispute, it follows that this property should have been decreed to vest as directed in her will. The court erred in decreeing to the contrary, and in awarding the property to the nieces, Mrs. Florence P. Brown and Mrs. Lucia Brownell McNear.

In *Trust Company of Georgia* v. *Brown,* supra, it was determined that the trust company has no interest in a review of this judgment. Accordingly, as to the Justice who there disqualified because of relationship to a stockholder, it is held that he is not disqualified to participate in the present decision.

*Judgment reversed. All the Justices concur, except Russell, C. J., and Hutcheson, J., who dissent.*

RUSSELL, Chief Justice, dissenting. Often have I reflected that

the lonesome dissent of a single member of the Supreme Court is so ineffectual that reference to the reasons which as matter of law compel a conscientious judge to decline to agree to the conclusion reached by his colleagues generally makes any expression of this single judge a matter of mere supererogation. However, my judicial duties are too strenuous to permit me (even if I had the *cacœthes scribindi*) to write at length on the principles announced and relied upon in the opinion of the majority of the court in this case. It is enough for me to say, at this point, that I have never made a study of alchemy; and not being learned in that involved and dubious science, I am not enough of a chemist to transmute and transform the title of fee-simple into a trust estate, the more especially to transform a power given by a testator only to his wife, and confer it upon a corporation which has no interest in the estate except the commissions it may receive from the two executorships,—the estate of Francis E. Brownell and that of his wife, Mrs. Florence H. Brownell. Conceding for the sake of the argument that there are many instances in which the grant of a fee simple may be held to include any lesser estate, as a general rule, I am unable to concede that this rule would apply in the case of a will. The power in this case was given to be executed by Mrs. Florence H. Brownell in her lifetime; and granting she might have devised, under the will of Francis E. Brownell, a lesser estate than a fee simple, I am of the opinion that the law will not permit that power to be exercised by another person after her death, for in this case that would permit an executor, in no way interested in the estate except for his commissions, to alter the will of Francis E. Brownell and to go beyond the power of disposition given to his wife, and to permit the court to make this latter will, instead of leaving that duty to the testatrix, in this case Mrs. Florence H. Brownell.

We must not lose sight of certain cardinal principles with respect to the law as to wills. This court has always recognized the principle that the will is included within the instrument, though proof of extraneous circumstances illustrating the intention of the testator, where the will itself is ambiguous, may be admitted. In this case there are no extraneous circumstances showing a variation of the original intention of Frances E. Brownell from that manifested in his will. There is no evidence that he ever at any

time expressed any interest in the Georgia School of Technology, or that he ever intended at any time to make the School of Technology or the University of Georgia a beneficiary. Such testimony as that might perhaps have been admissible, but none such appears in the record. A second rule which this court has always followed is that the testator's desires, as embodied in his will, are in each will the law of the case. This is a most general and healthful provision of the law, for otherwise it would disregard the power of the testator to make his own will, and leave to some one else, long after his death, the power to make it for him. Of course, if his will is contrary to the law of the State, it is within the power of the court to declare it invalid as a testamentary disposition, but nothing of that kind appears in the will of Francis E. Brownell. Conceding *per gratium argumenti* that contracts of various kinds may have been held to fall within the rule that the greater always includes the lesser estate, it is wholly incompatible in the case of a will, and under the circumstances disclosed by the record in this case it is clear to me that the power conferred upon Mrs. Florence H. Brownell to make any disposition of the estate of Francis E. Brownell was intended to be exercised by her only in her lifetime. I can find no authority, and I am not acquainted with any, that gave her the power to shift from her own shoulders the right of transforming the nature of the estate and to place it on the shoulders of another person, and it does not appear that any such power exists. From the silence of this court upon the proposition upon which my learned and eminent colleagues rely, I must infer that no one has ever raised the question before, because the idea that a will may be transformed from its plain meaning into something entirely different has never occurred to the army of learned lawyers who have practiced in Georgia in the last one hundred and fifty years. In this silence, and the absence of any authority from the courts of Georgia, I would prefer the silence upon the subject to even a pat decision from another jurisdiction. And yet the opinion of the majority does not submit even one such authority from a sister State.

Being one of the oldest alumni of the University of Georgia (having taken the degrees of A. B. and Ph. B. in 1879, and graduated at the University Law School in 1880), I have proved by my works covering a period of more than fifty-five years my devo-

tion to my alma mater. In 1883, over the protest of several members of the then board of trustees who thought my application for an appropriation to the University would be a fiasco, I had passed through the House an appropriation to enlarge the chapel so that there would be room to hang the magnificent painting of Saint Peter which now adorns the wall, by reason of the space in the chapel being extended from base to dome more than thirty feet. I should perhaps have been unable myself to have succeeded in passing it through the Senate, but Judge Peter W. Meldrim, who was perhaps the most devoted alumnus of all who ever lived, was serving his second term in the Senate, and put his shoulder to the wheel and had it passed in the Senate, and it thus became a law, and the chapel was enlarged and repaired. At each of my succeeding terms in the legislature I secured, on my own motion, appropriations of $10,000 for repairing the buildings of the University. I have always been devotedly attached to the School of Technology. The establishment of the technological school was first suggested and finally put in operation through the friends of my then colleague from Bibb, Nathaniel E. Harris, afterwards Governor of this State. At his suggestion perhaps, I was made a member of the original committee of seven, whose expenses were paid by the State, to visit the northern and eastern schools of technology, with a view of determining whether it was wise to attempt to organize one in Georgia. After our examination the committee, including myself, reported the project favorably. The fight for its establishment was long and hard. The bill failed to pass the House. In 1884 Governor Harris again introduced his bill, but its passage was not secured until 1885. In that year the bill did pass, and I fought for it with all the power I had, and I have loved and taken a pride in the institution ever since; so that I was greatly touched when Governor Harris sent me a copy of his autobiography, in which he took occasion to say, in substance, that if it had not been for the concluding speech of young Russell of Clarke, it is very doubtful but that the bill would have again failed. For years after I became chairman of the Board of Trustees of the University, it was my duty to name 3 members of the Board for the Georgia School of Technology, and I always endeavored to pick the best men that I could find upon the Board of Trustees for service at Tech. If I should yield to affection or

predilection, my prejudice (prejudgment) and my bias (leaning) would be all in favor of the School of Technology on any and every occasion. But such sentiments must be absolutely excluded when they conflict with the law. In the absence of any adjudication by this court, and when as now the case involves the construction of a will, which was asked by the executor, I can not concur in the judgment. I therefore dissent, and the more readily because by dissenting I prevent a judgment by a full bench, which would be a binding precedent.